IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 06-10116-CIV-MOORE/GARBER

RONALD TASSINARI, an individual, SHEILA
SILVA, individually, and as next best friend of
ASHLEY SILVA, a minor,

                Plaintiffs,

vs.

KEY WEST WATER TOURS, L.C., a Florida
corporation,

                Defendant.
_____

KEY WEST WATER TOURS, L.C., a Florida
corporation,

                Third-Party Plaintiff,

vs.

JEFFREY WILKERSON,

                Third-Party Defendant.
_____/

## ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS AS TO COUNT IV OF THE COMPLAINT

THIS CAUSE came before the Court upon Defendant Key West Water Tours, L.C.'s Motion for Judgment on the Pleadings as to Count IV of the Complaint (DE # 20). On February 20, 2007, Plaintiffs filed their Response (DE # 21). On February 26, 2007, Defendant Key West Water Tours, L.C. filed its Reply (DE # 24).

UPON CONSIDERATION of the Motion, the Responses, the pertinent portions of the record, and being otherwise fully advised in the premises, the Court enters the following Order.

## I. BACKGROUND

Plaintiffs are residents of Massachusetts. Defendant Key West Water Tours, L.C. is a Florida corporation doing business in Monroe County, Florida, as a personal water craft rental agency and provider of guided personal water craft tours to the public. On or about July 9, 2004, Defendant rented personal water craft to the Plaintiffs at or near Key West, Monroe County, Florida. Defendant then proceeded to take a group of personal water craft renters, including Plaintiffs and Third-Party Defendant Jeffrey Wilkerson, on a guided tour from its marina out to the area's surrounding waters.

During the tour, the water craft operated by Third-Party Defendant Jeffrey Wilkerson collided with the water craft operated by Plaintiffs Ronald Tassinari and Ashley Silva. Plaintiffs state in their complaint that, as a result of the collision between the water crafts, Plaintiffs Ronald Tassinari and Ashley Silva were injured about their heads, bodies, and extremities.

Plaintiff Sheila Silva, the mother of Plaintiff Ashley Silva, was operating her personal water craft nearby when the collision occurred. Plaintiff Sheila Silva does not allege that she was physically injured in the collision. In Count IV of the complaint, Plaintiffs allege that

> As a direct and proximate result of Water Tours' negligence and breach of statutory duty, Sheila Silva witnessed the collision of the water craft operated by Jeffrey Wilkerson into the water craft on which Plaintiffs Ronald Tassinari and Ashley Silva were sitting. Sheila Silva helped rescue her daughter and rendered aid at the site. As a direct and proximate result of witnessing her daughter Ashley Silva's accident, which resulted in head injury to Ashley Silva, Sheila Silva suffered emotional distress, mental anguish, reasonable fear of developing future physical and medical problems, loss of enjoyment of life, inconvenience in the normal pursuits and pleasures of life. The injuries and damages are permanent or continuing in nature, and Sheila Silva will suffer the losses and impairments in the future.

## II. ANALYSIS

### A. Standard of Review for Judgment on the Pleadings

Judgment on the pleadings under Rule 12(c) is appropriate when there are no material facts

in dispute, and judgment may be rendered by considering the substance of the pleadings and any judicially noticed facts. Riccard v. Prudential Ins. Co., 307 F.3d 1277, 1291 (11th Cir. 2002); Hawthorne v. Mac Adjustment, Inc., 140 F.3d 1367, 1370 (11th Cir. 1998).

The Court thus " accept[s] the facts in the [C]omplaint as true and view[s] them in the light most favorable to the nonmoving party." Horsley v. Feldt, 304 F.3d 1125, 1131 (11th Cir. 2002) (quotes and cites omitted). "Judgment on the pleadings is appropriate only when the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Horsley, 304 F.3d at 1131 (citing Moore v. Liberty Nat'l Life Ins. Co., 267 F.3d 1209, 1213 (11th Cir. 2001), cert. denied, 535 U.S. 1018 (2002)). Courts also may consider documents attached to a Complaint, an Answer, and the Motion—without converting the judgment on the pleadings motion into one for summary judgment—only if the attached documents are central to one of the claims and undisputed. Horsley, 304 F.3d at 1134–35.

### B. Negligent Infliction of Emotional Distress

General maritime law of the United States governs claims of negligent infliction of emotional distress in suits brought under the federal courts' admiralty jurisdiction. Hutton v. Norwegian Cruise Line Ltd., 144 F. Supp. 2d 1325, 1327–28 (S.D. Fla. 2001); Williams v. Carnival Cruise Lines, Inc., 907 F. Supp. 403, 405 (S.D. Fla. 1995); Chan v. Society Expeditions, Inc., 39 F.3d 1398, 1409 (9th Cir. 1994). This action concerns an injury in navigable waters and was filed under this Court's admiralty jurisdiction; therefore, general maritime law of the United States governs Count IV of the complaint, the claim of negligent infliction of emotional distress.

Claims of negligent infliction of emotional distress under maritime law of the United States must survive the zone of danger test. Hutton, 144 F. Supp. 2d at 1327–28; Williams, 907 F. Supp. at 405–06. The zone of danger test recognizes that "a near miss may be as frightening as a direct hit."

Consolidated Rail Corp. v. Gottshall, 512 U.S. 532, 549 n.11 (1994). This test allows "recovery for emotional injury to those plaintiffs who sustain a physical impact as a result of a defendant's negligent conduct." Id. It also allows recovery without a physical impact directly from the defendant's conduct, if the plaintiffs were "placed in immediate risk of physical harm by that conduct." Id. Though Gottshall dealt with emotional distress claims under FELA (Federal Employers' Liability Act), courts have analogized the remedial nature of FELA to maritime law and have used the same zone of danger test and similar reasoning to evaluate negligent infliction of emotional distress claims under general maritime law. Hutton, 144 F. Supp. 2d at 1327–28; Williams, 907 F. Supp. at 405–06; see also Chan, 39 F.3d at 1409.

At the heart of the dispute underlying the present motion for judgment on the pleadings is the issue of whether a plaintiff must allege a physical manifestation of emotional injury in a claim for negligent infliction of emotional distress under maritime law of the United States. Defendant argues that a physical manifestation of emotional injury is required and that because Plaintiffs fail to allege a physical manifestation of the emotional injury suffered by Plaintiff Sheila Silva, judgment on the pleadings should be granted against Plaintiffs as to that claim. Defendant cites Florida State cases in support of its argument. Def. Mot. at 3. These cases applying Florida State law are not binding because general maritime law applies in this case. Plaintiffs argue that under general maritime law, a physical manifestation of emotional injury is not required. In its reply, Defendant admits that a physical manifestation of emotional injury is not always required in cases where the plaintiff was also physical impacted or injured by a defendant's conduct, but argues that because Plaintiffs have alleged a "stand-alone" claim, i.e. Plaintiffs do not claim that Plaintiff Sheila Silva sustained a physical injury in the boat collision at issue, Plaintiffs cannot "piggyback" their emotional distress claim onto a physical injury, and therefore are required to allege a physical manifestation of

emotional injury. This Court agrees.

There is conflicting case law on whether the zone of danger test includes a physical manifestation requirement in maritime law. In <u>Williams v. Carnival Cruise Lines, Inc.</u>, the court held that the zone of danger test in maritime cases requires a physical manifestation of emotional injury. 907 F. Supp. 403, 405 (S.D. Fla.1995). First, the court recognized that the Supreme Court in <u>Gottshall</u> "did not decide whether objective physical manifestations are required for recovery." <u>Williams</u>, 907 F. Supp. at 406. The court then pointed out that the Restatement (Second) of Torts requires a physical manifestation when it states, "if the actor's conduct is negligent as creating an unreasonable risk of causing either bodily harm or emotional disturbance to another, and it results in such emotional disturbance alone, without bodily harm or other compensable damage, the actor is not liable for such emotional disturbance." <u>Williams</u>, 907 F. Supp. at 407 (citing Restatement (Second) of Torts § 436A (1965)). The court reasoned further that public policy supports this requirement because "a physical harm requirement furnishes a 'guarantee of genuineness' to the fact-finder, thus limiting the prospects for a flood of fraudulent claims." <u>Id.</u> at 407 (citing <u>Ellenwood v. Exxon Shipping Co.</u>, 795 F. Supp. 31, 34 (D. Me. 1992)). The court also recognized that "a majority of states follow the Restatement rule by requiring a physical manifestation of an emotional injury in order to recover for negligent infliction of emotional distress." <u>Id.</u> at 407. In light of these considerations, the court held that it would require plaintiffs to demonstrate a physical manifestation of emotional distress.

In <u>Hutton v. Norwegian Cruise Line Ltd.</u> and <u>In re Complaint of Clearsky Shipping Corp.</u>, a more recent Southern District of Florida case and Eastern District of Louisiana case held that the zone of danger test did not include a physical manifestation requirement. <u>Hutton v. Norwegian Cruise Line Ltd.</u>, 144 F. Supp. 2d 1325 (S.D. Fla. 2001); <u>In re Complaint of Clearsky Shipping</u>

Corp., No. CIV.A. 96-4099, 1998 WL 560347 (E.D. La. Aug.28, 1998). These courts reasoned that because the Supreme Court in Gottshall did not specifically require a physical manifestation, and because the Supreme Court specifically rejected the "genuineness" test[1] that had been applied by the Third Circuit, the Supreme Court did not intend to have a physical manifestation requirement. Clearsky, 1998 WL 560347, at *2–3; Hutton, 144 F. Supp. 2d at 1328. These courts argued that the Williams court was incorrect in holding that there was a physical manifestation requirement, because that would constitute a "genuineness" test, and the Supreme Court had rejected a "genuineness" test in Gottshall. Id. They further held that a physical manifestation requirement should be rejected because a "genuineness" test "would 'force judges to make highly subjective determinations' about claims that 'are far less susceptible to objective medical proof than are their physical counterparts.'" Clearsky, 1998 WL 560347, *2 (quoting Gottshall, 512 U.S. at 552); Hutton, 144 F. Supp. 2d at 1328.

The contention of the Hutton and Clearsky courts that the Supreme Court must have rejected a physical manifestation requirement because it rejected the "genuineness" test in that case is not persuasive. The "genuineness" test referred to in Gottshall is nothing like the commonly used objective physical manifestation requirement; rather, the "genuineness" test was subjective and required that district courts engage in "careful scrutiny of the facts" and "engage in an initial review of the factual indicia of the genuineness of a claim, taking into account broadly used common law standards, then should apply the traditional negligence elements of duty, foreseeability, breach, and causation in weighing the merits of that claim." Gottshall, 512 U.S. at 538, 540.

Additionally, the Supreme Court described the "genuineness" test in that case as an invention

---

[1] Gottshall indicates that the "genuineness" test was meant as a means of weeding out fraudulent emotional injury claims "through careful scrutiny of the facts" and that review of the facts must "provide a threshold assurance that there is a likelihood of genuine and serious emotional injury." Gottshall, 512 U.S. at 538.

of the Third Circuit "to give preference to the liberal recovery policy embodied in FELA *over the common law*." Gottshall, 512 U.S. at 537–38 (emphasis added). The court reversed the Third Circuit, held that the common law should play an important part in evaluating negligent infliction of emotional distress claims, and pointed out that one of the major problems with the Third Circuit's decision was that it disregarded the common law standards without explicit statutory provisions preempting the common law. Gottshall, 512 U.S. at 543–44 ("unless [common law principles] are expressly rejected in the text of the statute, they are entitled to great weight in our analysis. . . . [C]ommon-law principles must play a significant role in our decision."). The Supreme Court admonished courts, to look to the common law for guidance when reviewing claims for negligent infliction of emotional distress. Id. at 551(The common law must inform the availability of a right to recover . . . for negligently inflicted emotional distress, so the "merit" of a . . . claim of this type cannot be ascertained without reference to the common law.).

The Supreme Court did not specifically address whether a physical manifestation of emotional distress is required. Bloom v. Consolidated Rail Corp., 41 F.3d 911, 915 n.5 (3d Cir.1994). But the Supreme Court did recognize that the common law of many states requires such a physical manifestation of emotional distress. Gottshall, 512 U.S. at 549 n.11 ("Many jurisdictions that follow the zone of danger [test] . . . also require that a plaintiff demonstrate a 'physical manifestation' of an alleged emotional injury."). Therefore, applying a physical manifestation requirement would be consistent with the common law and Gottshall's admonition to use the common law in understanding and applying claims for negligent infliction of emotional distress.

While Hutton and Clearsky cite the correct reason for why the Supreme Court in Gottshall rejected the "genuineness" test of that case, they misapply that reasoning to the physical manifestation requirement. The Supreme Court rejected the "genuineness" test, in part because

7

"[j]udges would be forced to make highly subjective determinations concerning the authenticity of claims for emotional injury, which are far less susceptible to objective medical proof than are their physical counterparts." Gottshall, 512 U.S. at 552. Hutton and Clearsky somehow construed this reasoning to reject the physical manifestation requirement. Clearsky, 1998 WL 560347, *2; Hutton, 144 F. Supp. 2d at 1328. But the physical manifestation requirement, in contrast to the "genuineness" test of the Third Circuit, is an objective test that is very easy for a judge to apply without subjective determinations. The very language in Gottshall that is quoted by Hutton and Clearsky verifies this when it says subjective determinations like the "genuineness" test "are far less susceptible to objective medical proof than are their physical counterparts." Gottshall, 512 U.S. at 552. The physical manifestation requirement is a physical counterpart to the "genuineness" test that is easily verified by objective medical proof.

Gottshall's zone of danger test leaves open two possible means of collecting damages for emotional injury. The Supreme Court described the zone of danger test as allowing "recovery for emotional injury to those plaintiffs who sustain a physical impact as a result of a defendant's negligent conduct," and it also allows recovery without a physical impact directly from the defendant's conduct, if the plaintiffs were "placed in immediate risk of physical harm by that conduct." Gottshall, 512 U.S. at 547–48. The first category of recovery is often called "pain and suffering," which is associated with an actual physical impact, and this recovery is generally liberally granted. See e.g., Norfolk and Western Ry. Co. v. Ayers, 538 U.S. 135, 146–49 (2003). The second category is often referred to as "stand-alone" claims for negligent infliction of emotional distress, because they are not associated with a physical injury; these are generally much more limited in scope and recovery. Id. Plaintiffs in this case have pled a "stand-alone" claim because the Plaintiff Sheila Silva was not physically impacted in the boat collision; rather, she was nearby on a separate

water craft.

Much of the authority relied upon by Plaintiffs is distinguishable, as the cases are about emotional distress associated with a physical impact and are not stand-alone claims. Hutton involved a boat collision with a cruise liner, where the name plaintiffs suffered knee, back, neck, and hip problems and the other passengers complained of aches, bumps, bruises, etc. Hutton, 144 F. Supp. 2d 1326–27. Chan v. Society Expeditions, Inc., involved a plaintiff who was physically injured when she fell out of a raft that had capsized. 39 F.3d 1398 (9th Cir. 1994). Jones v. CVX Transp., involved plaintiffs who suffered from asbestosis, which is a physical injury/disease to the lungs caused by the inhalation of asbestos. 337 F.3d 1316 (11th Cir. 2003). Norfolk and Western Ry. Co. v. Ayers, involved plaintiffs suffering from asbestosis as well. 538 U.S. 135 (2003). These cases indicate that a physical manifestation of emotional injury is not required for claims for emotional distress caused by a physical impact. This Court agrees that no physical manifestation is required in this first category of recovery, but that does not bear on whether a physical manifestation is required in stand-alone claims.

Norfolk and Western Ry. Co. v. Ayers demonstrates the Supreme Court's much more restrictive policy toward stand-alone claims for emotional distress. 538 U.S. 135 (2003). In Norfolk, railroad employees suffering from asbestosis due to work-related exposure to asbestos claimed their employer had negligently inflicted upon them the emotional distress associated with the fear that their asbestosis might progress and cause cancer. Id. The court noted that Supreme Court decisions on the issue "describe two categories: Stand-alone emotional distress claims not provoked by any physical injury, for which recovery is sharply circumscribed by the zone-of-danger test; and emotional distress claims brought on by a physical injury, for which pain and suffering recovery is permitted." Id. at 147. The Court further explained that "[u]nlike stand-alone claims for negligently

9

inflicted emotional distress, claims for pain and suffering associated with, or 'parasitic' on, a physical injury are traditionally compensable." Id. at 148.

The majority opinion in Norfolk is more generous than the dissent in that it allows recovery for emotional distress caused by the fear of cancer, whereas the dissent would not allow such recovery. The majority justifies granting this recovery by arguing that a more liberal standard for recovery should be allowed because this is not a "stand-alone" claim, but rather emotional distress associated with an already inflicted physical injury, asbestosis. Id. at 146–60. The dissent questions whether asbestosis (or the physical injury) is really the direct cause of the emotional distress and argues for a more limited recovery standard. Id. at 171–72. But it appears that both the majority and dissent agree that a more limited recovery standard applies to stand-alone claims.

Finally, the Supreme Court indicates that the policy behind common law tests and restrictions on recovery for negligent infliction of emotional distress is generally valid and reasonable. Gottshall, 512 U.S. at 557 ("the common law restricts recovery for negligent infliction of emotional distress on several policy grounds: the potential for a flood of trivial suits, the possibility of fraudulent claims that are difficult for judges and juries to detect, and the specter of unlimited and unpredictable liability. Although some of these grounds have been criticized by commentators, . . . [w]e believe the concerns that underlie the common-law tests, and particularly the fear of unlimited liability, to be well-founded."). Although the Supreme Court did not specifically address the physical manifestation requirement, this Court believes that the policies listed by the Supreme Court above, are grounds for including the common law restriction of a physical manifestation of emotional injury in stand-alone negligent infliction of emotional distress claims.

Considering (1) the Supreme Court's restrictive policy regarding stand-alone claims for negligent infliction of emotional distress; (2) the admonition in Gottshall to look to the common law

10

for guidance in negligent infliction of emotional distress claims; (3) the many states that require a physical manifestation of emotional distress for common law actions of negligent infliction of emotional distress; (4) that the Restatement (Second) of Torts requires a physical manifestation; and (5) the beneficial public policy of placing an objective and easily applied restriction on frivolous claims, this Court holds that stand-alone claims for negligent infliction of emotional distress require a physical manifestation of emotional injury. Because Plaintiffs have not alleged that Plaintiff Sheila Silva has exhibited[2] a physical manifestation of her emotional distress, there are no facts in dispute that would allow recovery on the claim and judgment on the pleadings is appropriate.

### III. CONCLUSION

For the foregoing reasons, it is

ORDERED AND ADJUDGED that Defendant KEY WEST WATER TOURS, L.C.'s Motion for Judgment on the Pleadings as to Count IV of the Complaint (DE # 20) is GRANTED. It is further

DONE AND ORDERED in Chambers at Miami, Florida, this 24th day of March, 2007.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

cc: All Counsel of Record
U.S. Magistrate Judge Barry L. Garber

---

[2] Plaintiff do allege that Sheila Silva has "reasonable fear of developing future physical and medical problems." Pl. Compl. at 8. But a "fear" of developing a physical manifestation in the future is not a physical manifestation.