IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 4:06-CV-10116-KMM-MOORE-GARBER
MIAMI DIVISION

*6201/LMcMx*

RONALD TASSINARI, an individual,
and SHEILA SILVA, as next best friend
of ASHLEY SILVA, a minor,

                         Plaintiffs,

vs.

KEY WEST WATER TOURS, L.C.,
a Florida Corporation,

                         Defendant.
----------------------------------------------------------------/
KEY WEST WATER TOURS, L.C.,
a Florida Corporation,

                    Defendant/Third-Party Plaintiff,

vs.

JEFFREY WILKERSON,
an individual,

                    Third-Party Defendant.
----------------------------------------------------------------/

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AS TO DEFENDANT'S LIABILITY, WITH MEMORANDUM OF LAW IN SUPPORT

      Plaintiffs RONALD TASSINARI, and ASHLEY SILVA through SHEILA SILVA, file their

Motion for Summary Judgment pursuant to Fed.R.Civ.P. Rule 56, on Defendant's Liability as a

matter of as follows:

**I.**      **MATERIAL FACTS**

      1.      Plaintiffs were injured as a result of the allision of two personal watercraft in the

*Tassinari, et al. v. Key West Water Tours, L.C., et al.*
*Case No. 4:06-CV-10116-KMM-MOORE-GARBER*
*Motion for Summary Judgment as to Defendant's Liability*
-----------------------------------------------------------------------------

waters off Key West, Florida, on July 9, 2004. (Complaint, [D.E. 1]).  Defendant Key West Water

Tours ("Water Tours") rented personal watercraft to a several people as part a tour group which

included Plaintiffs Ronald Tassinari, Sheila Silva, Ms. Silva's daughters Ashley Silva and Julie

Silva, and Third-Party Defendant Jeffrey Wilkerson. (Complaint, [D.E. 1]).

   2.  Defendant Water Tours rented the watercraft to the group and also supplied a tour

guide to conduct the approximately eight watercraft renters, including Plaintiffs and Jeffrey

Wilkerson, on a tour from its marina out into the area's surrounding waters. (Complaint, [D.E. 1]).

The tour group was in the process of gathering at the tour's end when Jeffery Wilkerson,

approaching the group on his watercraft, collided with the stationary watercraft on which Ronald

Tassinari and Ashley Silva were sitting. (Complaint, [D.E. 1]).

   3.  The Plaintiffs were grouped closely together in the water near their tour guide, with

engines turned off, as per the tour guide, Chris Betz' instructions. (Dep. Ronald Tassinari, P. 90,

Line 25 through P. 91, Lines 1-4 [D.E. 25, Ex. "1"]). Wilkerson failed to turn or slow his watercraft

before striking Plaintiffs Ronald Tassinari and Ashley Silva's watercraft. (Dep. Ronald Tassinari,

P. 96, Lines 1-9 [D.E. 25, Ex. "1"]).

   4.  The incident in question occurred approximately one hour after the tour had been out

on the water and Betz stopped the tour group for their second "practice time." (Dep. Betz, P. 23-24,

Line 1; P. 25, Lines 15-20 [D.E. 37, Ex. "2"]).  The first "practice time" lasted approximately 15

minutes. (Dep. Betz, P. 45, Lines 20-25 [D.E. 37, Ex. "2"]). Third Party Defendant Jeffrey

Wilkerson, who, upon being summoned back to the tour group by Chris Betz, was not accompanied

*Tassinari, et al. v. Key West Water Tours, L.C., et al.*
*Case No. 4:06-CV-10116-KMM-MOORE-GARBER*
*Motion for Summary Judgment as to Defendant's Liability*
--------------------------------------------------------------------------------●

by Mr. Betz, but returned behind Betz and Wilkerson's friend, another tour member of the group,

at a rate of speed higher than Betz and the friend, according to Betz:

> I come in. Actually, the buddy, not Wilkerson but the other buddy, comes in nice and slow. I come in right behind him. We slide into our little group, and right when my ski – the group is sitting just like this, and right when my ski was starting to turn, I turned with it to watch where Wilkerson was coming in, and he was coming in way too fast, way too fast, and right at the group. And it's just like an old lady in a car, panicked, eyes wide open, completely wide open, staring straight at the group and a panic on his face because he's going too fast, and never let off the throttle until he hit.

(Dep. Betz, P. 27, Lines 5-15 [D.E. 37, Ex. "2"]).

5.      After helping Tassinari and Ashley Silva out of the water, Betz called Water Tours

to notify the office of the accident. (Dep. Betz, P. 37, Lines 11-15 [D.E. 37, Ex. "2"]). Tassinari was

asked to drive his watercraft to shore by Betz. (Dep. Ronald Tassinari, PP. 99-100, Ex. "A"). Once

ashore, Plaintiffs took a taxi to the hospital, as Water Tours had not called 911 to request emergency

medical help, and Chris Betz had called for a taxi and not an ambulance. (Dep. Betz, P. 38, Lines

5-20 [D.E. 37, Ex. "2"]); (Dep. Ronald Tassinari, P. 100, Lines 9-17, Ex. "A").

6.      Chris Betz moved to Key West in 2003 from Michigan. (Dep. Betz, P. 7, Lines 21-24

[D.E. 37, Ex. "2"]). Betz had been previously employed by a watercraft livery tour company in Key

West called "Key Cat" for approximately eight months before his employment with Defendant.

(Dep. Betz, P. 10 [D.E. 37, Ex. "2"]).

7.      Betz left his employment with Key Cat because the training for renting watercraft was

"intense" and "... the owner was a jerk. He was intense. He wanted you to know everything about

the Jetski and he wanted you to teach the people there. It was just you told every single person about

*Tassinari, et al. v. Key West Water Tours, L.C., et al.*
*Case No. 4:06-CV-10116-KMM-MOORE-GARBER*
*Motion for Summary Judgment as to Defendant's Liability*
--------------------------------------------------------------------------------

the safety, how it works, how to ride it, what to do. That was just – I don't know what else to say."
(Dep. Betz, P. 13 [D.E. 37, Ex. "2"]). The training at Key Cat consisted of watching a video  in order
to mimic the person giving the instructions. (Dep. Betz, P. 14 [D.E. 37, Ex. "2"]).

      8.     Water Tours is co-owned by Gerald Grogan and Jeremy Ray. (Dep. Ray, PP. 6-7, Ex.
"B").  At the time in question, both partners stated that they worked daily at the Water Tours site and
shared the duties of running the business.  (Dep. Ray, PP. 7-8, Ex. "B");  (Dep. Grogan, PP. 13-14
[D.E. 33, Ex. "4"]).

      9.     Betz worked with Water Tours beginning in 2003, but only worked part-time for
Water Tours conducting tours on watercraft. (Dep. Betz, P. 14, Lines 21-25 [D.E. 37, Ex. "2"]).
Betz' full-time employer was Barracuda Scooters, a sister company to Defendant Key West Water
Tours. (Dep. Betz, P. 11 [D.E. 37, Ex. "2"]). Betz estimated that he had given approximately 30 to
40 tours prior to the tour in question. (Dep. Betz, P. 21, Lines 13-16 [D.E. 37, Ex. "2"]).

      10.    Betz has never taken a boater's safety course. (Dep. Betz, P. 12 [D.E. 37, Ex. "2"]).
The training at Water Tours consisted of accompanying other tour guides for "I do believe it was
three tours before I ever took my own tour. ... And then also there's also probably, I don't know, like
three or four days of, you know, repeat your speech, give the speech while another person goes out
on tour, corrections throughout the speech by other tour guides, so." (Dep. Betz, P. 15, Lines 8-16
[D.E. 37, Ex. "2"]).

      11.    Co-owner Gerald Grogan participated in Betz' training. (Dep. Betz, P. 17, Lines 20-
22 [D.E. 37, Ex. "2"]). Gerald Grogan describes himself as involved on a daily basis with the

*Tassinari, et al. v. Key West Water Tours, L.C., et al.*
*Case No. 4:06-CV-10116-KMM-MOORE-GARBER*
*Motion for Summary Judgment as to Defendant's Liability*
--------------------------------------------------------------------------------

operation of Water Tours, which employed three guides at the time in question. (Dep. Grogan, PP. 13-14 [D.E. 33, Ex. "4"]).

12.     When Jeremy Ray was asked whether he was familiar with Florida statutes and Florida Fish and Wildlife Commission standards pertaining to the rental of personal watercraft to individuals, Ray replied "I haven't yet looked them up yet, lately." (Dep. Ray, P. 9, Lines 2-5; P. 20, Lines 6-25 [D.E. 33, Ex. "B"]). Ray was unfamiliar with Florida Statute § 327.54(4) and § 327.39 (6)(b), (2),  requiring certification of a boater safety course by an instructor approved by the National Association of State Boating Law Administrators and written acknowledgment of receipt of training by all renters. (Dep. Ray, P. 13, Lines10-17; P. 21, Lines 7-15 [D.E. 33, Ex. "B"]).  Ray admitted that the Rental Agreements only warn operators to adhere to instructions provided by the renter and operate the watercraft in a safe manner, and that the Agreement is signed before any safety instructions have been given. (Dep. Ray, P. 23-P.24 [D.E. 33, Ex. "B"]).

13.     Grogan stated that he begins the tour guide's training then has experienced guides complete the training of the new guides.  (Dep. Grogan, PP. 14-15 [D.E. 33, Ex. "4"]). Water Tours does not require their guides to take or pass a safe boating course in order to lead tour groups. (Dep. Grogan, P. 19, Lines 8-12 [D.E. 33, Ex. "4"]).

14.     Betz stated that his instructions to the renters included using the ignition key, locating the fire extinguisher, how to get back on the watercraft if you fall off, the instructor's hand signals, how the throttle works, how far a distance to keep from the next person, what the bilge pump is, to scan left and right, to "... give the right of way to everyone, ask them to stop if they think they're

*Tassinari, et al. v. Key West Water Tours, L.C., et al.*
*Case No. 4:06-CV-10116-KMM-MOORE-GARBER*
*Motion for Summary Judgment as to Defendant's Liability*
-----------------------------------------------------------------------------:

going to hit someone." (Dep. Betz, P. 16-17 [D.E. 37, Ex. "2"]).  The instructions take approximately ten minutes to deliver to the group. (Dep. Betz, P. 45, Lines 13-19 [D.E. 37, Ex. "2"]).

15.    Water Tours did not show an informational video to watercraft renters. (Dep. Betz, P. 18, Lines 18-21 [D.E. 37, Ex. "2"]). Water Tours neither gave nor had safety information cards to give renters that Betz knew of.  (Dep. Betz, P. 19, Lines 6-11 [D.E. 37, Ex. "2"]).  Betz stated that Water Tours' practice was to have renters sign the contracts before receiving any instructions regarding the use of watercraft.  (Dep. Betz, P. 19, Lines 12-24 [D.E. 37, Ex. "2"]).

16.    Water Tours' practice, as far as Betz knew, did not include having renters sign any form acknowledging the receipt of instructions on safe use of watercraft, and was unaware that Florida law requires any such documentation. (Dep. Betz, P. 19-20 [D.E. 37, Ex. "2"]).

17.    Gerald Grogan confirmed Water Tours' practice of not giving safety instructions until after renters completed the Rental Agreement form and not giving renters a post-instruction form declaring that safety instructions were duly given. (Dep. Grogan, P. 20 [D.E. 37, Ex. "2"]). Jeremy Ray also stated that no other document was given for renters to sign other than the Rental Agreement. (Dep. Ray, P.9, Lines 11-14 [D.E. Ex. "1"]).

18.    Chris Betz had never read the Yamaha owner's manual for the Waverunners that the tour group was operating that day, and does not know what information is given by Yamaha in its manual.  (Dep. Betz, P. 33, Lines 13-20 [D.E. 37, Ex. "2"]).

19.    Grogan stated that Water Tours displayed a poster-sized safety sheet inside the Water Tours rental booth, but not on the dock or outside the booth or anywhere else on the premises in

*Tassinari, et al. v. Key West Water Tours, L.C., et al.*
*Case No. 4:06-CV-10116-KMM-MOORE-GARBER*
*Motion for Summary Judgment as to Defendant's Liability*
---------------------------------------------------------------------------•

2004. (Dep. Grogan, PP. 21-22 [D.E. 33, Ex. "4"]).

20.    Chris Betz did not ask the tour group to demonstrate that they understood the instructions given while still at the dock, prior to departing on the two-hour tour, nor was that the practice of Water Tours to do so. (Dep. Betz, P. 46, Lines 1-14 [D.E. 37, Ex. "2"]). Plaintiff Tassinari concurs that there was no videotape of safety instructions, no poster giving any safety instructions, and no demonstration to Betz that the tour members could safely operate their watercraft before proceeding out into the water. (Dep. Ronald Tassinari, P. 107, Ex. "A").

21.    Gerald Grogan has "no idea" what became of the Waverunner that Jeffrey Wilkerson was operating, but was apparently disposed of by Key West Water Tours and not kept for Plaintiffs to test or examine to determine whether seaworthiness was an issue. (Dep. Grogan, P. 32, Lines 23-25 [D.E. 33, Ex. "4"]).

22.    Jeffrey Wilkerson deposed and stated that he was not shown a manual, not shown any warning labels as to the safe operation of the vessel, not shown a videotape on how to safely operate a Waverunner, not instructed as to what vessels have the right of way, and not told not to jump wakes. (Dep. Wilkerson, P. 19-22, Ex. "C").

## II.    SUMMARY JUDGMENT SHOULD BE GRANTED

23.    Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "there is no genuine issue as to any material fact and (if) the moving party is entitled to a judgment as a matter of law." Assimack v. J.C. Penney Corp., 2005 U.S. Dist. LEXIS 20463, 4-6 (M. D. Fla. 2005) (granting summary judgment as to defendant's comparative negligence affirmative defense

*Tassinari, et al. v. Key West Water Tours, L.C., et al.*
*Case No. 4:06-CV-10116-KMM-MOORE-GARBER*
*Motion for Summary Judgment as to Defendant's Liability*
-------------------------------------------------------------------------------

and Fabre affirmative defense), citing <u>Hammer v. Slater</u>, 20 F.3d 1137, 1140 (11th Cir. 1994).

24.     Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986) (Once movant has met its initial burden demonstrating that there is no genuine issue of material fact, the burden shifts to nonmovant to provide evidence from discovery devices listed in Rule 56(c) other than pleadings, demonstrating that genuine issue of material fact exists); <u>Gargiulo v. G.M. Sales, Inc</u>., 131 F.3d 995, 999 (11th Cir. 1997); <u>Avirgan v. Hull</u>, 932 F.2d 1572, 1577 (11th Cir. 1991); see also Fed. R. Civ. P. 56(e) ("The evidence presented cannot consist of conclusory allegations or legal conclusions;" nonmovant's response "... must set forth specific facts showing that there is a genuine issue for trial.").

25.     The mere allegation of an alleged factual dispute will not defeat an otherwise properly supported motion for summary judgment. <u>Anderson v. Liberty Lobby, Inc</u>., 477 U.S. 242, 247-48, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). Only facts from which a reasonable jury could return a verdict for the nonmoving party will preclude the entry of summary judgment on a properly supported motion for summary judgment. <u>Id</u>.

26.     Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that

Case 4:06-cv-10116-KMM   Document 46   Entered on FLSD Docket 05/10/2007   Page 9 of 20

*Tassinari, et al. v. Key West Water Tours, L.C., et al.*
*Case No. 4:06-CV-10116-KMM-MOORE-GARBER*
*Motion for Summary Judgment as to Defendant's Liability*
--------------------------------------------------------------------------------

party will bear the burden of proof at trial." Paulucci v. Liberty Mut. Fire Ins. Co., 190 F. Supp. 2d

1312, 1316 (M.D. Fla. 2002), quoting Celotex, 477 U.S. at 322. In ruling on a motion for summary

judgment, "the function of the court is not to 'weigh the evidence and determine the truth of the

matter but to determine whether there is an issue for trial.'" Paulucci, 190 F. Supp. 2d at 1316,

quoting Lockett v. Wal-Mart Stores, Inc., 2000 U.S. Dist. LEXIS 3016, 2000 WL 284295, at *2

(S.D. Ala. 2000) (quoting Anderson, 477 U.S. at 249).

## III.    WATER TOURS IS NEGLIGENT PER SE, RENDERING THEM LIABLE

27.    Plaintiffs have not released Water Tours from liability prior to their operation and use

of the watercraft in question, as the Rental Agreements signed by Tassinari and Sheila Silva (Rental

Agreements [D.E. 44-3]) are not legally sufficient to be enforced. Water Tours is liable due to Water

Tours' substantial violation of Florida statutes designed to protect persons such as Plaintiffs, who

were injured as a result of Water Tours' failure to comply with the statutes, resulting in placing an

untrained Jeffrey Wilkerson out into the water where he operated his Waverunner poorly, colliding

with Plaintiffs.

28.____A party cannot indemnify itself against a showing that it is liable on the grounds of

negligence per se. John's Pass Seafood Co. v. Weber, 369 So. 2d 616, 618 (Fla. 2d DCA 1979)

(holding such indemnification is against public policy). Negligence per se is established when there

is "a violation of any ... statute which establishes a duty to take precautions to protect a particular

class of persons from a particular injury or type of injury." deJesus v. Seaboard Coast Line Railroad

Co., 281 So. 2d 198, 201 (Fla. 1973).

*Tassinari, et al. v. Key West Water Tours, L.C., et al.*
*Case No. 4:06-CV-10116-KMM-MOORE-GARBER*
*Motion for Summary Judgment as to Defendant's Liability*
-------------------------------------------------------------------------------•

29.     Because Tassinari and Ashley Silva are members of the class of persons Florida Statute § 327.54 is designed to protect (lessors of rental watercraft) and the violation of the statute caused the kind of harm (negligent operation of a rented watercraft causing harm to a member of the public) that the law is designed to prevent (persons injured by negligent operation of rental watercraft by an untrained renter), Water Tours cannot succeed in enforcing the releases signed by Tassinari & Silva. Torres v. Offshore Professional Tour, Inc., 629 So. 2d 192 (Fla. 3d DCA 1993) (remanding upon a finding of a showing sufficient to allege negligence per se in order to invalidate release).

30.     The plaintiff in Torres was injured in a boat crash while participating in a celebrity boat race conducted by OPT. Torres sued OPT seeking to recover damages on the grounds of strict liability, negligence, and breach of statutory and regulatory duties. Torres executed releases prior to the race, which OPT argued in its motion for summary judgment  released it from  liability. Torres argued that the pertinent release did not protect OPT from liability because OPT breached its statutory and/or regulatory duty to secure certain permits as required by section 327.48, Florida Statutes (1991), and state and federal regulations designed to protect boaters and spectators. That failure, Torres asserted, constituted negligence per se; thus, the releases did not insulate OPT from liability in this action. Torres, at 193.

31.     "Negligence per se arises from a violation of any statute which establishes a duty to take precautions to protect a particular class of persons from a particular injury or type of injury." Torres, at 193, citing deJesus v. Seaboard Coast Line R.R. Co., 281 So. 2d 198, 201 (Fla. 1973).

32.     "Plaintiff must establish membership in the class of persons the statute intended to

*Tassinari, et al. v. Key West Water Tours, L.C., et al.*
*Case No. 4:06-CV-10116-KMM-MOORE-GARBER*
*Motion for Summary Judgment as to Defendant's Liability*
--------------------------------------------------------------------------------

protect, demonstrate that the injury is of the type the statute was designed to protect, and show that the injuries are a proximate result of the violation of the statute." Torres, at 194, citing deJesus, 281 So. 2d at 201. "The enforcement of a release or waiver immunizing a boat race promoter from liability for breach of a positive statutory duty designed to protect the well-being of the person executing the release would be contrary to public policy. Torres, at 194, citing John's Pass Seafood Co. v. Weber, 369 So. 2d 616, 618 (Fla. 2d DCA 1979).

33.     Likewise, plaintiffs in deJesus v. Seaboard C. L. R. Co., 281 So. 2d 198, killed when struck by a train at an unlighted crossing, were held protected under Fla. Stat.§ 450.061(1), which statute fit the category of statutes "specifically adopted for the purpose of establishing a stricter duty of care." Id., citing Tamiami Gun Shop v. Klein, 116 So.2d 421 (Fla. 1959) (violation of a statute prohibiting the sale of firearms to minors).

34.     The Court further held that a violation of that type of statute was not the only type of statute a violation of which results in a finding of negligence per se. deJesus, quoting Hoskins v. Jackson Grain Co., 63 So.2d 514 (Fla. 1954) (violation of statute regulating labeling of seed offered for sale constituted negligence per se "Where one violates a penal statute imposing upon him a duty designed to protect another, he is negligent as a matter of law, therefore, responsible for such damage as is proximately caused by his negligence..."). Violation of any type of statute other than penal statutes and ordinances, such as a traffic violation, may be considered only as prima facie evidence of negligence. Allen v. Hooper, 126 Fla. 458, 171 So. 513 (1937).

35.     Courts sitting in admiralty have determined that a violation of a statute or regulation

*Tassinari, et al. v. Key West Water Tours, L.C., et al.*
*Case No. 4:06-CV-10116-KMM-MOORE-GARBER*
*Motion for Summary Judgment as to Defendant's Liability*
--------------------------------------------------------------------------------

may result in a finding of negligence per se. <u>White v. NCL America, Inc.</u>, 2006 U.S. Dist. LEXIS

24756 (S.D. Fla. 2006). The doctrine of negligence per se has been long accepted in Florida. <u>Id</u>,

citing <u>DeJesus v. Seaboard Coast R.R. Co.</u>, 281 So.2d 198, 200-01 (Fla. 1973). "Negligence per se

is a violation of any... statute which establishes a duty to take precautions to protect a particular class

of persons from a particular injury or type of injury."<u>White</u>, citing  <u>DeJesus</u> at 201.

36.    "In a negligence per se case, the duty is defined by the applicable statute rather than

the common law, and a breach of the statute itself constitutes a breach of the duty. <u>White</u>, *15, citing

D. Dobbs, 1 The Law of Torts § 134 (2001). "To make her case for negligence per se, the Plaintiff

must demonstrate that she is a person the ADA was designed to protect, that her injury is the type

of injury the ADA is designed to protect against, and that her injuries are the proximate result of the

Defendants' violation of the ADA." <u>White</u>, *15, citing  <u>Torres v. Offshore Professional Tour, Inc.</u>,

629 So.2d 192, 194 (Fla. 3d DCA 1993). This Court, in <u>White</u>, held that "[b]ecause the ADA was

not designed to protect those with disabilities from personal injuries, Plaintiff is unable to state a

claim for *per se* negligence. Indeed, 42 U.S.C. § 12101(b) expressly states that the purpose of the

ADA is the elimination of discrimination against individuals with disabilities. " <u>White</u>, *15, citing

<u>PGA Tour, Inc. v. Martin</u>, 532 U.S. 661, 674, 121 S. Ct. 1879, 149 L. Ed. 2d 904 (2001).

37.    This Court, in <u>White</u>, held that "... federal maritime law is largely in accord with the

principles discussed in this section. See <u>Keefe v. Bahama Cruise Line, Inc</u>., 867 F.2d 1318, 1322

(11th Cir. 1989) ("we hold that the benchmark against which a shipowner's behavior must be

measured is ordinary reasonable care under the circumstances."). <u>White</u>, *16.

*Tassinari, et al. v. Key West Water Tours, L.C., et al.*
*Case No. 4:06-CV-10116-KMM-MOORE-GARBER*
*Motion for Summary Judgment as to Defendant's Liability*
----------------------------------------------------------------------------------

38.     District Courts sitting in admiralty and using Florida law, have held that proof of negligence per se renders a release unenforceable in maritime law. <u>Knarr v. Chapman School Of Seamanship</u>, 2000 U.S. Dist. LEXIS 5351 (E.D. Pa. 2000). Plaintiff Knarr, a student at the Chapman School of Seamanship, ("Chapman"), slipped and fell on one of the wet, wooden ladder steps while disembarking from a ship owned and operated by Chapman.  Plaintiff had signed a release holding Chapman harmless and agreeing to indemnify, and sought to have the release found unenforceable as a result of Chapman's per se negligence. A party cannot indemnify itself against negligence per se. <u>John's Pass Seafood Co. v. Weber</u>, 369 So. 2d 616, 618 (Fla. 2d DCA 1979) (holding such indemnification is against public policy).

39.     Chapman filed for summary judgment, and  Knarr filed a report from an engineer stating that Chapman violated Coast Guard Regulations, Florida laws and codes, and standards adopted by the American National Standards Institute ("ANSI"), applying to ladders. The ladder in question failed to comply with the ANSI standard in three respects, but the court determined that a violation of the ANSI standards is not sufficient to constitute negligence per se under Florida law. However, the Coast Guard had adopted the specific ANSI standard regarding the step off space (minimum of 7 inches) for escape ladders on small passenger vessels. 46 C.F.R. § 177.500(k).

40.     Negligence per se is established when there is "a violation of any ... statute which establishes a duty to take precautions to protect a particular class of persons from a particular injury or type of injury." <u>DeJesus v. Seaboard Coast Line Railroad Co.</u>, 281 So. 2d 198, 201 (Fla. 1973).

*Tassinari, et al. v. Key West Water Tours, L.C., et al.*
*Case No. 4:06-CV-10116-KMM-MOORE-GARBER*
*Motion for Summary Judgment as to Defendant's Liability*
-------------------------------------------------------------------------------

41.     The Knarr court did not find a Florida state court case holding that a violation of a Coast Guard regulation amounts to negligence per se, the court cited Reyes v. Vantage Steamship Co., Inc., 609 F.2d 140, 143 (5th Cir. 1980) ("the failure to follow any Coast Guard regulation which is a cause of an injury establishes negligence per se."); and Kernan v. American Dredging Co., 355 U.S. 426, 2 L. Ed. 2d 382, 78 S. Ct. 394 (1958), denying Chapman's motion for summary judgment.

42.     In the instant matter, Water Tours' violation of the applicable Florida statutes meant to protect Plaintiffs renders water Tours liable as a matter of law under the doctrine of negligence per se.

## V.     WATER TOURS, NEGLIGENT PER SE, IS INELIGIBLE TO ASSERT LIMITATION OF LIABILITY DUE TO PRIVITY AND KNOWLEDGE

43.     Congress enacted the Limitation of Liability Act, recently re-codified as 46 U.S.C. §§ 30501 et seq., to permit a vessel owner to limit its liability to the extent of the value of the vessel as valuated at the end of the voyage, to shelter the owner from unlimited liability for the consequences of maritime accidents and disasters, unless the loss was caused by the vessel owner's own personal neglect or default. Complaint of Three Buoys Houseboat, Vacations U.S.A., Ltd., 878 F.2d 1096 (8th Cir. 1989).

44.     "The determination of whether the owner of a vessel is entitled to limitation of liability requires a two-step analysis." Keys Jet Ski, Inc. v. Kays, 893 F.2d 1225, 1230 (11th Cir. 1990).  "First, the court must determine what acts of negligence or conditions of unseaworthiness caused the accident. Second, the court must determine whether the ship owner had knowledge or privity of those same acts of negligence or conditions of unseaworthiness." Kays. Once the opposing

*Tassinari, et al. v. Key West Water Tours, L.C., et al.*
*Case No. 4:06-CV-10116-KMM-MOORE-GARBER*
*Motion for Summary Judgment as to Defendant's Liability*
--------------------------------------------------------------------------------

party has proved negligence or unseaworthiness, the burden of proof shifts to the owner of the vessel

to prove lack of privity or knowledge. <u>Kays</u>, 893 F.2d at 1230 (citations omitted).

    45.    "Privity" under the Act has been defined as:

> ... personal participation of the owner in some fault, or act of negligence, causing or
> contributing to the loss, or some personal knowledge or means of knowledge, of which he
> is bound to avail himself or a contemplated loss, or a condition of things likely to produce
> or contribute to the loss, without adopting appropriate means to prevent it.

<u>M/V Sunshine II</u>, 808 F.2d 762 (11th Cir. 1987). Consistent with the statutory purpose of the

Limitation Act to protect innocent investors, "privity or knowledge" generally refers to the vessel

owner's personal participation in, or actual knowledge of, the specific acts of negligence or

conditions of unseaworthiness which caused or contributed to the casualty. <u>Coryell v. Phipps</u>, 317

U.S. 406, 943 AMC 18 (1943).

    46.    "Privity and knowledge" has further been defined as "complicity in the fault that

caused the accident." <u>Nuceio v. Royal Indemnity Co.</u>, 415 F.2d 228, 1969 AMC 1825, 1827 (5th Cir.

1969); see also, <u>Hernandez v. M/V Rajuan</u>, 841 F.2d 582, 1989 AMC 521 (5th Cir. 1988)

("Knowledge" has been defined as the personal cognizance or means of knowledge of which the

owner is bound to avail itself).

    47.    A high burden of diligence to detect and correct fault is placed on an owner: "The

measure in such cases is not what the owner knows, but what he is charged with finding out." <u>In re</u>

<u>Sause Bros. Ocean Towing Co.</u>, 1991 AMC 1242, 1253 (D. Ore. 1991), quoting <u>States S.S. Co. v.</u>

<u>United States</u>, 259 F.2d 458, 466, 1957 AMC 1181 (9th Cir. 1957); <u>Complaint of Patton-Tully Transp.</u>

*Tassinari, et al. v. Key West Water Tours, L.C., et al.*
*Case No. 4:06-CV-10116-KMM-MOORE-GARBER*
*Motion for Summary Judgment as to Defendant's Liability*
-----------------------------------------------------------------------------

Co., 797 F.2d 206 (5th Cir. 1986) (Constructive knowledge exists where the owner should have

obtained the necessary information by reasonable inspection).

  48. Courts will find personal negligence of an owner or privity and knowledge wherever

the owner could have had some inkling of the existence of a condition or of a potential problem that

resulted in the loss. Zeringue v. Gulf Fleet Marine Corp., 666 F.Supp. 860, 1988 AMC 1694 (E.D.

La. 1987) ("privity" is fault or neglect in which the shipowner personally participates, and

"knowledge" is the means of personal cognizance or means of knowledge of which a shipowner is

legally bound to avail himself of a condition likely to cause the loss unless the proper means were

adopted to prevent the loss).

  49. Courts sitting in admiralty have found that the scope of activities examined within

the "privity or knowledge" of the shipowner is encompassing in nature. Amoco Cadiz Limitation

Process, 1992 AMC 914 (7th Cir. 1992). Corporations are expected to supervise and train

employees, even lower-level employees, as knowledge or privity of lower-level employees will be

found if inadequate training or supervision is shown to have been tolerated by the corporation.

Amoco Cadiz Limitation Process, 1992 AMC 914. "Corporations and shipowners are required to

exercise an ever-increasing degree of supervision and inspection ...; imposing a heavy burden on

shipowners to prove their lack of privity or knowledge; rendering the shupowner's duty to ensure the

seaworthiness of the ship nondelegable; and narrowing the group of potential defendants eligible for

exoneration under the Act ... ." Amoco Cadiz Limitation Process, 1992 AMC 914 (7th Cir. 1992).

*Tassinari, et al. v. Key West Water Tours, L.C., et al.*
*Case No. 4:06-CV-10116-KMM-MOORE-GARBER*
*Motion for Summary Judgment as to Defendant's Liability*
----------------------------------------------------------------------------

50.     Different standards for imputing the negligence of subordinate employees are applied to individual owners as compared to corporate owners for determining the existence of privity. Coryell v. Phipps, 317 U.S. 406, 1943 AMC 18 (1943); Gibboney v. Wright, 517 F.2d 1054, 1975 AMC 2071 (5th Cir. 1975). "Whether a corporation has 'privity or knowledge' of a negligent act may be determined on the basis of whether the negligent employee is sufficiently high in the corporate hierarchy to make his awareness that of the corporation." Continental Oil Co. v. Bonanza Corp., 706 F.2d 1365J, 1983 AMC 2059 (5th Cir. 1983); In re Hellenic Inc., 2001 U.S. App. Lexis 10472 (5th Cir. 2001).

51.     Generally, in the context of a corporate shipowner, the privity and knowledge of "corporate managers vested with discretionary authority" is attributed to the corporation. Great Lakes Dredge & Dock Co. v. City of Chicago, 3 F.3d 225, 231, 1993 AMC 2409, 2419 (7th Cir. 1993), aff'd. sub nom Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 1995 AMC 913 (1995), distinguished "managerial" employees from "purely ministerial" employees for purposes of determining corporate privity or knowledge. In re Complaint of Marine Sports, Inc., 840 F.Supp. 46, 1994 AMC 1678 (D. Md. 1993) (if the president of a corporation personally participates in the control and operation of the vessel, privity and knowledge is attributed to the corporation).

52.     Privity and knowledge is imputed to the corporation if the employee is an executive officer, manager or superintendent whose scope of authority includes supervision over the phase of the business out of which the loss or injury occurred. Coryell, supra; In Re Hellenic Lines, Ltd., 813 F.2d 634, 1987 AMC 2470 (4th Cir. 1987) (The issue of whether the loss resulted from mere

*Tassinari, et al. v. Key West Water Tours, L.C., et al.*
*Case No. 4:06-CV-10116-KMM-MOORE-GARBER*
*Motion for Summary Judgment as to Defendant's Liability*
--------------------------------------------------------------------------------

negligence of officers and crew, or whether the loss resulted from incompetence of the officers and

crew, determines whether the owner may be entitled to limit (negligence of crew), or whether the

owner would be barred from limitation of liability (incompetence);Matter of Ta Chi Navigation

Corp., S/A, 523 F.Supp. 148, 1982 AMC 1710 (E.D. La. 1981), rev'd 691 F.2d 873 (denying

limitation; the gross errors of the master amounted to incompetence, not mere negligence, placing

the burden on the owner to establish that its crew was competent or that incompetence didn't cause

the loss); see also Complaint of Seiriki Kisen Daisha, 629 F.Supp. 1374, 1986 AMC 913 (S.D. N.Y.

1986); In re Potomac Transport, Inc., 909 F.2 42, 1991 AMC 190 (2d Cir. 1990) (presumption of

incompetence may be raised by gross acts of negligence of Watch Officer, but presumption may be

rebutted by showing of  shipowner's exercising of due diligence in selecting and training a

competent crew; owner's knowledge of temporary incompetence of vessel's crewmembers and

failure to provide a competent crew defeats limitation); Cupit v. McClanahan Contractors, Inc., 1

F.3d 346, 1994 AMC 784 (5th Cir. 1983) (narrowed the definition of "management" to persons

having management authority relative to the field of operation in which the negligence occurred).

  53. The mere giving of instructions to subordinate employees will not suffice to give

owners the benefit of limitation. Spencer Kellogg & Son v. Hicks, 285 U.S. 502, 1932 AMC 503

(1932). The owner is required to show that an established system to assure compliance with policy

against operating vessels in ice and/or follow up by inquiries or personal inspection to assure

compliance is in place and being followed. States S.S. Co. v. United States, 259 F.2d 470, 1958

AMC 1775 (9th Cir. 1958); Warrior & Gulf Navigation Co. Limitations Proceedings, 1997 AMC

*Tassinari, et al. v. Key West Water Tours, L.C., et al.*
*Case No. 4:06-CV-10116-KMM-MOORE-GARBER*
*Motion for Summary Judgment as to Defendant's Liability*
-----------------------------------------------------------------------------•

1432 (S.D. Al. 1996) (finding privity and knowledge of the owner where company had "no
meaningful training program" for its tug officers).

54.     An important component of limiting liability is the owner's fulfillment of its non-
delegable duty to provide an adequate and competent crew for the vessel's intended voyage. <u>Empire
Seafoods, Inc. v. Anderson</u>, 398 F.2d 204, 1968 AMC 2264 (5th Cir. 1968); <u>Admiral Towing Co.
v. Wollen</u>, 290 F.2 641,1961 AMC 2333 (9th Cir. 1961). The  privity and knowledge of the owner
in a breach of that duty will be found even when the hiring of the crew was delegated to the master.
<u>In re Ocean Foods Boat Co.</u>, 692 F.Supp.1253, 1989 AMC 579 (D. Or. 1988).

55.     In the instant case, Defendant Water Tours failed to adequately train its employees,
as evidenced by Grogan and Ray's complete ignorance of Florida statutory law, the failure to require
certification of its tour guides, the lack of visible signage of safety instructions, and the failure to
obtain written acknowledgments by its renters that they had received safety instructions.

WHEREFORE, Plaintiffs move this Court to grant Summary Judgement in Plaintiffs' favor
and against Defendant Key West Water Tours as a matter of law.

Respectfully submitted this 10th day of May, 2007

/s/     *P. Leigh McMillan Minoux, Esq.*
        P. Leigh McMillan Minoux, Esq.
        Florida Bar No.: 624543
        Leigh@rodriguez-aronson.com
        Domingo C. Rodriguez, Esquire
        Florida Bar No.: 394645
        Domingo@rodriguez-aronson.com
        RODRIGUEZ, ARONSON & ESSINGTON, P.A.
        2121 Ponce de Leon Boulevard, Suite 730

*Tassinari, et al. v. Key West Water Tours, L.C., et al.*
*Case No. 4:06-CV-10116-KMM-MOORE-GARBER*
*Motion for Summary Judgment as to Defendant's Liability*
-----------------------------------------------------------------------------------------

Coral Gables, Florida 33134
T+      305/ 774-1477
F+      305/ 774-1075

### CERTIFICATE OF SERVICE

THE UNDERSIGNED CERTIFIES that on May 10, 2007, the foregoing document was electronically filed with the Clerk of the Court using CM/ECF, and that the foregoing document is being served this day on all counsel of record identified below, via transmission of Notice of Electronic Filing generated by CM/ECF or by some electronic form of service and/or via facsimile 954/ 568-0085, to:

Bruce Trybus, Esq.
COONEY, MATTSON, LANCE, BLACKBURN, RICHARDS & O'CONNOR, P.A.
P.O. Box 14546
Ft. Lauderdale, Florida 33302

Joshua Brankamp, Esq.
COONEY, MATTSON, LANCE, BLACKBURN, RICHARDS & O'CONNOR, P.A.
1600 West Commercial Boulevard, Suite 200
Fort Lauderdale, Florida 33309

/s/      *P. Leigh McMillan Minoux, Esq.*
P. Leigh McMillan Minoux, Esq.