IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 4:06-CV-10116-KMM-MOORE-GARBER
MIAMI DIVISION

*6201/LMcMx*

RONALD TASSINARI, an individual,
and SHEILA SILVA, as next best friend
of ASHLEY SILVA, a minor,

                    Plaintiffs,

vs.

KEY WEST WATER TOURS, L.C.,
a Florida Corporation,

                    Defendant.
-----------------------------------------------------------------/
KEY WEST WATER TOURS, L.C.,
a Florida Corporation,

                    Defendant/Third-Party Plaintiff,

vs.

JEFFREY WILKERSON,
an individual,

                    Third-Party Defendant.
-----------------------------------------------------------------/

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT WATER TOURS' MOTION FOR SUMMARY JUDGMENT

      Plaintiffs RONALD TASSINARI and ASHLEY SILVA, through SHEILA SILVA, file their

Response opposing Defendant Key West Water Tours' Motion Summary Judgment as follows:

      1.      Plaintiffs would show that Defendant Water Tours i) is not entitled to limitation of

liability or exoneration from liability in the instant matter under 46 U.S.C. § 30505 due to Water

Tours' privity and knowledge of the circumstances resulting in the instant injury and loss sustained

*Tassinari, et al. v. Key West Water Tours, L.C., et al.*
*Case No. 4:06-CV-10116-KMM-MOORE-GARBER*
*Response to Water Tours' Motion for Summary Judgment*
--------------------------------------------------------------------------------

by Plaintiffs;  ii)  that Florida Statutes § 327.39 and § 327.54 track federal maritime law as codified

under 46 U.S.C.S. § 13101 et seq., establishing state boater safety regulations, and are relevant and

applicable in this matter; and iii) the Rental Agreement signed by Plaintiff Ronald Tassinari,

purporting to waive all claims against Water Tours and releasing Water Tours' from liability to

Plaintiffs is neither binding nor valid due to Water Tours' violation of the relevant boater safety

laws, rendering Water Tours liable under the doctrine of negligence per se.

**I.        Water Tours is Neither Entitled to Exoneration For, or Limitation of, Liability.**

2.        Defendant Water Tours, although asserting the affirmative defense of limitation of

liability, has not petitioned this Court as of this date for limitation of liability, which time for

petitioning this Court has expired. Additionally, deposition testimony by Water Tours' owners,

Gerald Grogan and Jeremy Ray, shows that Water Tours was in gross violation of Florida's boaters'

safety statutes, did not employ tour guides or employees qualified to adequately instruct watercraft

renters, failed to give the required safety instructions in written or video format, failed to adequately

verbally instruct the members of the tour group of the watercraft's characteristics, and have no proof

that adequate safety instructions were given.

3.        Defendant Water Tours, in quoting the federal statute providing for limitation of

liability, 46 U.S.C.S. § 30505, failed to advise the Court that there are strict requirements for

petitioning the court for this protection. 46 U.S.C.S. § 30511, "Action by owner for limitation,"

provides, "(a) In general.  The owner of a vessel may bring a civil action in a district court of the

United States for limitation of liability under this chapter [46 USCS §§ 30501 et seq.]. The action

*Tassinari, et al. v. Key West Water Tours, L.C., et al.*
*Case No. 4:06-CV-10116-KMM-MOORE-GARBER*
*Response to Water Tours' Motion for Summary Judgment*
--------------------------------------------------------------------------

must be brought within 6 months after a claimant gives the owner written notice of a claim." 46 U.S.C.S. § 30511 (2007).

4.      The six-month limit may not be blithely ignored. <u>Diamond v. Beutel</u>, 247 F.2d 604, 606-607 (5th Cir. (Old) 1957) (affirming dismissal of petition for limitation of liability as time-barred); <u>In The Matter Of: Waterfront License Corp.</u>, 2005 AMC 2013 (S.D. Fla. 2005) (affirming the dismissal of the petition for limitation of liability by personal watercraft livery business, brought after the six month time limit, as time barred). <u>See, also,</u> <u>Standard Wholesale Phosphate & Acid Works, Inc., v. Travelers Ins. Co.</u>, 107 F.2d 373 (4th Cir. 1939) (affirming the dismissal of the petition for limitation of laibility, brought after the six month time limit, as time barred); <u>The Main v. Williams</u>, 152 U.S. 122 (1894) (the owner of a vessel's right to limit liability is wholly statutory in the United States).

5.      The court in <u>Acid Works, Inc.</u>, held that "[t]o avail himself of this right granted by the statute the owner must bring himself within the terms fixed by the statute. While the purpose of the statute is to protect and encourage maritime commerce and, while statutes of this character are to be liberally construed, this liberality of construction cannot be extended so that express conditions laid down by the statute itself are waived or ignored.  The statute clearly and expressly requires as a condition to the filing of the petition that it must be filed "within six months after a claimant shall have given to or filed with such owner written notice of claim." <u>Id.</u>, at 376.

6.      Additionally, whether Water Tours is entitled to claim limitation of liability under 46 U.S.C. § 30501 may also be determined by compliance with, or violation of, a maritime statutory

*Tassinari, et al. v. Key West Water Tours, L.C., et al.*
*Case No. 4:06-CV-10116-KMM-MOORE-GARBER*
*Response to Water Tours' Motion for Summary Judgment*
--------------------------------------------------------------------------------

law, as evidence of privity and knowledge of the condition causing the injury and loss. Ritchey v. Florida Power & Light Co., 468 So. 2d 306, 308 (Fla. 2d DCA 1985) (33 C.F.R. 66 (regulation of private aids to navigation) requires a private party to apply to Coast Guard for determination of lights and markings to be displayed; failure to comply with federal safety regulation constitutes negligence per se), citing American Zinc Co. v. Foster, 313 F. Supp. 671 (S.D. Miss. 1970), aff'd, 441 F.2d 1100 (5th Cir.), cert. denied, 404 U.S. 855 (1971).

   7.  The deposition testimony of both Wilkerson and Tassinari, along with the complete absence of written acknowledgment by any person in the tour group that day of having received safety instructions and adequate training by the renters shows that Water Tours had knowledge of the inadequacy of its instruction. That knowledge established "privity and knowledge" sufficient to defeat a petition for limitation of liability. In The Matter Of The Complaint Of Bay Runner Rentals, Inc., 113 F. Supp. 2d 795 (D. Md. 2000) (denying petition for limitation of liability due to watercraft livery business' failure to provide safety warnings prior to plaintiff's embarking on rented watercraft). The Bay Runner Rentals court denied limitation of liability, defining 'privity or knowledge' as encompassing "some personal knowledge or means of knowledge, of which [a managerial employee] is bound to avail himself of a contemplated loss, or a condition of things likely to produce or contribute to the loss, without adopting appropriate means to prevent it." Bay Runner Rentals, Inc., 113 F. Supp. 2d at 806, citing 3 Benedict on Admiralty § 41 (quoting Lord v. Goodall, Nelson & Perkins S.S. Co., 4 Sawy. 292, 15 F. Cas. 884, 887 (C.C. Cal. 1877)); Empresa Lineas Maritimas Argentinas, S.A. v. United States, 730 F.2d 153, 155 (4th Cir. 1984) ("the

*Tassinari, et al. v. Key West Water Tours, L.C., et al.*
*Case No. 4:06-CV-10116-KMM-MOORE-GARBER*
*Response to Water Tours' Motion for Summary Judgment*
-----------------------------------------------------------------------------

shipowner is chargeable with knowledge of acts or events or conditions of unseaworthiness that could have been discovered through reasonable diligence.").

8.      The court in <u>Bay Runner Rentals</u>, supra, denied the livery owner's petition for limitation of liability due to the failure of the management to sufficiently warn renters of potential dangers in using watercraft. The management "... should reasonably have known that certain customers were likely to receive a PWC without receiving  adequate instruction." <u>Bay Runner Rentals, Inc</u>., 113 F. Supp. 2d at 799.

9.      "Federal maritime law has absorbed most common-law negligence theories, including the failure to warn of dangerous conditions. <u>See</u>, 8 Benedict on Admiralty § 4.03; <u>Gautreaux v. Scurlock Marine, Inc</u>., 107 F.3d 331, 334 (5th Cir. 1997) (allowing Jones Act plaintiff to recover where employer negligently failed to properly train him in the operation of ship's winch). The parties agree that an allegation of failure to provide adequate instruction is a subset of this general allegation of failure to warn. Restatement 2d Torts § 388. Therefore, in order to establish Bay Runner's negligence, Claimants must prove that:

> 1. the product possesses a danger that is not obvious to the anticipated users,
> 2. Bay Runner had reason to know that the product had a danger that was not obvious to the anticipated users, and
> 3. Bay Runner failed to give an adequate warning of that danger to the user.

<u>Bay Runner Rentals, Inc</u>., 113 F. Supp. 2d 795, 803.

10.      The Court in <u>Bay Runner Rentals</u> found that Bay Runner's program for instructing its customers was deficient; neither the management nor the dock boy who was entrusted with delivering the safety warnings was licensed; Bay Runner did not show the Arctic Cat "Play It Safe"

*Tassinari, et al. v. Key West Water Tours, L.C., et al.*
*Case No. 4:06-CV-10116-KMM-MOORE-GARBER*
*Response to Water Tours' Motion for Summary Judgment*
-------------------------------------------------------------------------------

video to its rental customers, nor did Bay Runner provide its customers with written material or safety manuals, but did require each customer to sign a rental agreement stating that "I have received operating instructions. I understand there are no brakes on a water vehicle and stopping distance from full speed is approximately 260 ft. Furthermore, I have read and understand Maryland rules and regulations regarding personal watercraft operation." Bay Runner Rentals, Inc., at 799.

11.     The court found that Bay Runner's customers received no written or videotaped warning regarding the lack of off- throttle steering, "[i]nstead, Bay Runner relied exclusively on a laconic sixteen-year-old dock boy to orally convey to Bay Runner's customers the "critically important safety information" related to the lack of off-throttle steering." Bay Runner Rentals, Inc., 113 F. Supp. 2d at 800. The court found that Bay Runner's reliance on the non-safety certified dock boy to impart the vital safety regulations, course boundaries, rules of the road, lack of off-throttle steering, and the use of the emergency kill switch, without a check list to ensure that he had given complete information to each customer, foreseeable would lead to failure to properly instruct. The Court held that  Bay Runner failed in its Limitation of Liability Act claim.  Bay Runner Rentals, Inc., at 806.

## II.     The Proposed Florida Law Tracks Federal Boaters' Safety Legislation as Codified in the Shipping Title of the United States Code, and is Applicable in This Matter.

12.     The Florida law cited by Plaintiffs is supported by the federal maritime legislation enacted "...[t]o encourage greater State participation and uniformity in boating safety efforts, and particularly to permit the States to assume the greater share of boating safety education, assistance,

*Tassinari, et al. v. Key West Water Tours, L.C., et al.*
*Case No. 4:06-CV-10116-KMM-MOORE-GARBER*
*Response to Water Tours' Motion for Summary Judgment*
---------------------------------------------------------------------------

and enforcement activities... . ... ... the Secretary shall make contracts with, and allocate and distribute amounts to, eligible States to assist them in developing, carrying out, and financing State recreational boating safety programs." 46 USCS § 13102 (a) (2007).

13.     The federal law specifically provides for interaction between the federal government and the individual states: "(c) A State whose recreational boating safety program has been approved by the Secretary is eligible for allocation and distribution of amounts under this chapter [46 USCS §§ 13101 et seq.] to assist that State in developing, carrying out, and financing its program. Matching amounts shall be allocated and distributed among eligible States by the Secretary as provided by section 13104 of this title [46 USCS § 13104]." 46 USCS § 13102 (2007).

14.     For the sake of brevity, Plaintiffs refer to their Response to Water Tours' Motion in Limine [D.E. 47], setting forth the legal analysis used to determine when the use of a state law is applicable and when it is prohibited in determining maritime issues.

**III.     Plaintiff Ronald Tassinari is not Bound By the Unenforceable Rental Agreement.**

15.     The Release and Waiver clauses contained in the Rental Agreement are not legally sufficient to be enforceable against plaintiff Ronald Tassinari due to Water Tours' failure to provide adequate instructions to Jeffrey Wilkerson or the Plaintiffs either prior to the signing of the Rental Agreements or prior to embarking on the tour. Water Tours' gross negligence is apparent from the multitude of facts showing that Water Tours failed at every opportunity to impart vital safety information. Water Tours, co-owned by Gerald Grogan and Jeremy Ray (Dep. Ray, PP. 6-7, Ex.

*Tassinari, et al. v. Key West Water Tours, L.C., et al.*
*Case No. 4:06-CV-10116-KMM-MOORE-GARBER*
*Response to Water Tours' Motion for Summary Judgment*
----------------------------------------------------------------------------

"B"), both stated that they worked daily at the Water Tours site and shared the duties of running the business (Dep. Ray, PP. 7-8, Ex. "B");  (Dep. Grogan, PP. 13-14 [D.E. 33, Ex. "4"]).

16.    Both partners were completely unaware of their duty as Florida business operators to require their employees to obtain certification of a boater safety course taught by an instructor approved by the National Association of State Boating Law Administrators in order to provide the relevant watercraft safety instructions to renters. (Dep. Grogan, P. 19, Lines 8-12 [D.E. 33, Ex. "4"]); (Dep. Ray, P.9, Lines 11-14 [D.E. Ex. "1"]). Employee Chris Betz, the group's tour guide that day, had never taken a boater's safety course, was not certified as required under Florida law, and in fact was not aware of that requirement, which carries a penalty under the law. (Dep. Betz, P. 12 [D.E. 37, Ex. "2"]). See, Fla. Stat. § 327.54(4) and § 327.39 (6)(b), (2).

17.    Water Tours cannot evidence any proof that the relevant safety instructions were given to Third Party Defendant Jeffrey Wilkerson, or any of the Plaintiffs, as obtainment of written acknowledgment by renters of having received safety instructions was not practiced by Water Tours. (Dep. Ray, P. 13, Lines 10-17; P. 21, Lines 7-15 [D.E. 33, Ex. "B"]). See, Fla. Stat. § 327.39 (6)(b),(2). Employee Chris Betz knew of no practice by Water Tours of obtaining renters' written acknowledgment of receipt of safety instructions for operating the watercraft, and was unaware that Florida law required any such documentation (Dep. Betz, P. 19-20 [D.E. 37, Ex. "2"]).

18.    Water Tours did not show an informational video to watercraft renters (Dep. Betz, P. 18, Lines 18-21 [D.E. 37, Ex. "2"]); and did not give safety information cards to renters (Dep. Betz, P. 19, Lines 6-11 [D.E. 37, Ex. "2"]).

*Tassinari, et al. v. Key West Water Tours, L.C., et al.*
*Case No. 4:06-CV-10116-KMM-MOORE-GARBER*
*Response to Water Tours' Motion for Summary Judgment*
-------------------------------------------------------------------------------

19.     Although Water Tours displayed a poster-sized safety sheet, the sheet was placed inside the Water Tours rental booth, on a side wall, and not on the dock or outside the booth or anywhere else on the premises. (Dep. Grogan, PP. 21-22 [D.E. 33, Ex. "4"]).

20.     Chris Betz had never read the Yamaha owner's manual for the Waverunners that the tour group was operating that day, and does not know what information is given by Yamaha in its manual (Dep. Betz, P. 33, Lines 13-20 [D.E. 37, Ex. "2"]).

21.     Third Party Defendant Jeffrey Wilkerson's grossly inadequate instruction resulted in poor operation of the watercraft, resulting in the striking of Plaintiffs' watercraft. Facts show that Wilkerson was not adequately instructed, and as a result of the lack of instruction and supervision, panicked upon approaching the group, and struck the Plaintiffs. Tour guide Chris Betz plainly stated that Wilkerson panicked while operating his watercraft on approaching the group: "And it's just like an old lady in a car, panicked, eyes wide open, completely wide open, staring straight at the group and a panic on his face because he's going too fast, and never let off the throttle until he hit." (Dep. Betz, P. 27, Lines 5-15 [D.E. 37, Ex. "2"]).

22.     The deposition testimony of Jeffrey Wilkerson showed that he was a first-time user of personal watercraft (Dep. Wilkerson, P. 24 [D.E. 46, Ex. "C"]), and was not given adequate safety instructions by a certified instructor as required under Florida law in that Wilkerson i) Was not shown the Yamaha WaveRunner manual before starting the tour; ii)  Was not shown the Yamaha Riding Practice Guide before starting the tour; iii) Was not shown the Yamaha Riding Instruction Guide before starting the tour; iv)  Was not shown the Yamaha Basic Orientation Videotape before

*Tassinari, et al. v. Key West Water Tours, L.C., et al.*
*Case No. 4:06-CV-10116-KMM-MOORE-GARBER*
*Response to Water Tours' Motion for Summary Judgment*
-----------------------------------------------------------------------------

starting the tour; v)  Was not alerted to the warning labels on the Yamaha Waverunner, if indeed any were affixed to the Waverunner;  vi)  Was not advised not to jump wakes at any time prior to starting on the tour or during the tour that day; and vii)  Was not instructed as to when to give right of way to other vessels. (Dep. Wilkerson, P. 24 [D.E. 46, Ex. "C"]).

23.     The only safety instruction, a poster-sized safety sheet posted inside the Water Tours rental booth (Dep. Grogan, PP. 21-22 [D.E. 33, Ex. "4"]), was not seen by Wilkerson, as the rental booth was one "...you didn't actually go in a facility. You'd walk up to a window type." (Dep. Wilkerson, P. 24 [D.E. 46, Ex. "C"]).

24.     The process of signing the Rental Agreement occurred before safety instructions were given and Wilkerson, after paying for the rental, was instructed to "...sign this, this, and this, and just wait over there. So we went and walked over to the dock and waited there." (Dep. Wilkerson, P. 30 [D.E. 46, Ex. "C"]). The safety instructions were given by Betz as the tour group was seated on their WaveRunners; Wilkerson's friends were somewhat experienced, Plaintiffs were inexperienced, and Wilkerson, also inexperienced, was payed less attention to by the guide Betz, as Betz focused his attention on Plaintiffs: "But he gave more attention to the other group (plaintiffs). I didn't really get a chance to really get everything. And then when he was fine, he was like, "Okay, let's go." (Dep. Wilkerson, P. 44 [D.E. 46, Ex. "C"]).

25.     Wilkerson had a difficult time keeping up with the tour guide: "When we got to the Atlantic side, it was very rough, and the tour guide, I had a hard time keeping up with him. He was going very fast. My experienced friends did not have hard time; however, I did, and the plaintiffs

*Tassinari, et al. v. Key West Water Tours, L.C., et al.*
*Case No. 4:06-CV-10116-KMM-MOORE-GARBER*
*Response to Water Tours' Motion for Summary Judgment*
-------------------------------------------------------------------------

were actually behind me. So we did have – actually did have a hard time with the weather conditions

of the water and winds. I personally had a hard time keeping up with him." (Dep. Wilkerson, P. 38

[D.E. 46, Ex. "C"]).

26.    The enforceability of a maritime release may be denied when violations of maritime

laws establish negligence per se. Torres v. Offshore Professional Tour, Inc., 629 So. 2d 192, 193

(Fla. 3d DCA 1993) (remanding upon a finding of facts sufficient to allege negligence per se in order

to have release signed by injured boater declared unenforceable, quoting DeJesus v. Seaboard Coast

Line Railroad Co., 281 So. 2d 198, 201 (Fla. 1973) (Negligence per se arises from violation of any

statute establishing a duty to take precautions to protect a particular class of persons from a particular

injury or type of injury). Negligence per se is established by Water Tours' violation of statutes

establishing a duty to take precautions to protect boaters and renters from maritime injury.

Indemnification for Water Tours' negligence is against public policy. DeJesus, 281 So. 2d at  201.

27.    Because Plaintiffs Ronald Tassinari and Ashley Silva are members of the class of

persons the relevant Florida Statutes are designed to protect (lessors of rental watercraft) and the

violation of the statute caused the kind of harm (injury to persons by the negligent operation of a

watercraft) that the law is designed to prevent (educating boaters to enhance boating safety and

prevent foreseeable marine collisions), Water Tours cannot succeed in enforcing the Rental

Agreement signed by Tassinari, and cannot claim waiver as to Ashley Silva, a minor who did not

sign any kind of waiver, and on whose behalf no waiver was executed. See, In re Royal Caribbean

Cruises Ltd., 403 F. Supp. 2d 1168, 1173 (S.D. Fla. 2005) (where a release of liability is signed on

*Tassinari, et al. v. Key West Water Tours, L.C., et al.*
*Case No. 4:06-CV-10116-KMM-MOORE-GARBER*
*Response to Water Tours' Motion for Summary Judgment*
-----------------------------------------------------------------------------------

behalf of a minor child for an activity run by a for-profit business, outside of a school or community setting, the release is typically unenforceable against the minor).

28.     This Court, determining maritime causes of action in tort, has determined that a violation of a Florida Statute may result in a finding of negligence per se.  White v. NCL America, Inc., 2006 U.S. Dist. LEXIS 24756 (S.D. Fla. 2006) (quoting several Florida cases, including Torres v. Offshore Professional Tour, Inc., supra, where Florida statutory law tracking federal maritime law was cited as appropriate for determining that a release may be unenforceable due to a defendant's negligence per se).

29.     The Court in White v. NCL America, Inc., 2006 U.S. Dist. LEXIS 24756 (S.D. Fla. 2006), held that the doctrine of negligence per se has been long accepted in Florida. Id. "Negligence per se is a violation of any... statute which establishes a duty to take precautions to protect a particular class of persons from a particular injury or type of injury."White, citing DeJesus at 201. This Court in White held that "In a negligence per se case, the duty is defined by the applicable statute rather than the common law, and a breach of the statute itself constitutes a breach of the duty. White, at *15, citing D. Dobbs, 1 The Law of Torts § 134 (2001).

30.     This Court, in White, held that negligence per se is an accepted doctrine in maritime law. White, *15, citing Torres, 629 So.2d at 194. Ultimately, White's negligence per se claim was ruled insufficient, because the proposed regulations under the Americans with Disabilities Act  was not designed to protect those with disabilities from sustaining personal injuries, but 42 U.S.C. § 12101(b) was intended to eliminate discrimination against individuals with disabilities. White, at

*Tassinari, et al. v. Key West Water Tours, L.C., et al.*
*Case No. 4:06-CV-10116-KMM-MOORE-GARBER*
*Response to Water Tours' Motion for Summary Judgment*
------------------------------------------------------------------------------

*15-*16 (federal maritime law is largely in accord with the principles of negligence per se).

31.     Several courts sitting in admiralty have held that a release seeking to indemnify a defendant for its own negligence is against public policy. <u>Knarr v. Chapman School Of Seamanship</u>, 2000 U.S. Dist. LEXIS 5351 (E.D. Pa. 2000). Plaintiff Knarr was  a student at the Chapman School of Seamanship, and slipped and fell on Chapman's  vessel's ladder steps while disembarking. Plaintiff had signed a release holding Chapman harmless and agreeing to indemnify, and Chapman filed for summary judgment, alleging that Knarr failed to present expert testimony supporting the contention that the condition in question on the ship constituted statutory violations to establish negligence per se, nullifying the release. Knarr responded that Chapman violated Coast Guard Regulations, Florida laws and codes, and standards adopted by the American National Standards Institute ("ANSI"), applying to ladders; the court determined that the United States Coast Guard had adopted the specific ANSI standard regarding the step off space (minimum of 7 inches) for escape ladders on small passenger vessels, under 46 C.F.R. § 177.500(k), and cited <u>Reyes v. Vantage Steamship Co., Inc</u>., 609 F.2d 140, 143 (5th Cir. 1980), for the holding that "... the failure to follow any Coast Guard regulation which is a cause of an injury establishes negligence per se."); and <u>Kernan v. American Dredging Co.</u>, 355 U.S. 426 (1958) (violation of Coast Guard causing death of seaman renders employer liable).

32.     Summary judgment was later granted under <u>Knarr v. Chapman Sch. of Seamanship</u>, 2000 U.S. Dist. LEXIS 18967 (E.D. Pa. 2000), when the court determined that the vessel in question

*Tassinari, et al. v. Key West Water Tours, L.C., et al.*
*Case No. 4:06-CV-10116-KMM-MOORE-GARBER*
*Response to Water Tours' Motion for Summary Judgment*
-------------------------------------------------------------------------------

carried fewer than six passengers, and as such, was not subject to 46 C.F.R. § 177.500(k), setting the

minimum 7 inch step-off distance, as Subchapter T is only applicable to passenger vessels under 100

tons, carrying more than six passengers for hire. See 46 C.F.R. § 175.110(a). <u>Knarr</u>, 2000 U.S. Dist.

LEXIS 18967, *7.

33.     As to the content of the Rental Agreement itself, this Court has held that a release

may be upheld when the language is "clear and ambiguous." <u>In re Royal Caribbean Cruises Ltd.</u>, 403

F. Supp. 2d 1168, 1171 (S.D. Fla. 2005), where the Court upheld a release which it determined was

clear and unambiguous, "In this case, the clause at issue states in bold, capital letters that the renter

shall, "HEREBY FULLY RELEASE AND FOREVER DISCHARGE" all relevant parties, including

Royal Caribbean, from any action "ARISING FROM ANY ACCIDENT, INJURY OR PROPERTY

DAMAGE WHATSOEVER, RELATED TO, RESULTING FROM, OR IN ANY WAY

CONNECTED WITH" use of the WaveRunner." This Court found that the language clearly and

unambiguously sought to release Royal Caribbean from liability stemming from Scott Miller's use

of the WaveRunner, and upheld the release. However, it should be noted that the Court did not find

any evidence of negligence on the part of Royal Caribbean in renting the watercraft to any of the

people involved in the accident.

34.     In the instant case, the hold harmless provision is not in capitals, is not bolded, is

printed in small type, and is the third item listed, under the innocuous provisions concerning the

renter's having examined equipment (as yet unseen), and that the renter will obey all applicable rules

*Tassinari, et al. v. Key West Water Tours, L.C., et al.*
*Case No. 4:06-CV-10116-KMM-MOORE-GARBER*
*Response to Water Tours' Motion for Summary Judgment*
---------------------------------------------------------------------------

(as yet not given by Water Tours), and just before an innocuous provision stating that the renter will

not sublet or loan the equipment.  (Rental Agreement [D.E. 44, Ex. "2").

      35.    The language is not as clear to a layperson as the Royal Caribbean release, and was

clearly designed to be obscure to the renter. Plaintiffs respectfully invite the Court's attention to the

Royal Caribbean Cruises Ltd., 403 F. Supp. 2d 1168, 1171 (S.D. Fla. 2005) decision, where the

Court quoted Charles Poe Masonry, Inc. v. Spring Lock Scaffolding Rental Equip. Co., 374 So. 2d

487 (Fla. 1979), for the principle that:

> With respect to the possibility of contractual indemnity, we take note that contracts of indemnification which attempt to indemnify a party against its own wrongful acts are viewed with disfavor in Florida. Florida Power & Light Co. v. Elmore, 189 So.2d 522 (Fla. 3d DCA 1966); Nat Harrison Associates, Inc. v. Florida Power & Light Co., 162 So.2d 298 (Fla. 3d DCA 1964). Such contracts will be enforced only if they express an intent to indemnify against the indemnitee's own wrongful acts in clear and unequivocal terms. University Plaza Shopping Center, Inc. v. Stewart, 272 So.2d 507, 509 (Fla. 1973) (A contract of indemnity will not be construed to indemnify the indemnitee against losses resulting from his own negligent acts unless such intention is expressed in clear and unequivocal terms. . . .", quoting 41 Am.Jur.2d, Indemnity, § 15 at 700).

Charles Poe Masonry, Inc., 374 So. 2d 487, 489.

      36.    In the instant matter, Water Tours expressly provided that they would provide

relevant, vital safety instructions, in the Rental Agreement clause number 2, stating:

> "CHARTERER warrants that he/she can swim and is competent to operate the equipment and agrees to operate the equipment in a specified area and in a careful and prudent manner at all times. *CHARTERER shall obey all applicable rules and regulations governing use of said equipment, irrespective of contributory negligence on the part of other persons."*

(Rental Agreement [D.E. 44, Ex. "2") (emphasis added).

*Tassinari, et al. v. Key West Water Tours, L.C., et al.*
*Case No. 4:06-CV-10116-KMM-MOORE-GARBER*
*Response to Water Tours' Motion for Summary Judgment*
-------------------------------------------------------------------------------

37.    Further, Water Tours represented that they followed and adhered to relevant Florida

Boating Safety laws, and expected the renter to do the same, as provided in the Rental Agreement

clause number 6, stating:

> CHARTERER agrees that in the event of an accident, he shall report to OWNER the accident and nature thereof, the boat and persons involved [name of boat and owner's name], forthwith *and will file an accident report as required by Florida law.*

(Rental Agreement [D.E. 44, Ex. "2") (emphasis added). Because Water Tours expressly represented

that Florida law should be followed, any renter would expect Florida law to be followed, and the

relevant safety information be provided, as the Rental Agreement erroneously stated would occur.

The release and waiver contained in the Rental Agreement should also be ruled unenforceable due

to Water Tours' failure to uphold the representations made in the Rental Agreement.

WHEREFORE, Plaintiffs respectfully request, for the foregoing reasons, that this Court

DENY Defendant's Motion for Summary Judgment.

Respectfully submitted this 21st day of May, 2007

/s/    *P. Leigh McMillan Minoux, Esq.*
P. Leigh McMillan Minoux, Esq.
Florida Bar No.: 624543
Leigh@rodriguez-aronson.com
Domingo C. Rodriguez, Esquire
Florida Bar No.: 394645
Domingo@rodriguez-aronson.com
RODRIGUEZ, ARONSON & ESSINGTON, P.A.
2121 Ponce de Leon Boulevard, Suite 730
Coral Gables, Florida 33134
T+     305/ 774-1477
F+     305/ 774-1075

*Tassinari, et al. v. Key West Water Tours, L.C., et al.*
*Case No. 4:06-CV-10116-KMM-MOORE-GARBER*
*Response to Water Tour's Motion In Limine*
-------------------------------------------------------------------------

## CERTIFICATE OF SERVICE

THE UNDERSIGNED CERTIFIES that on May 21, 2007, the foregoing document was electronically filed with the Clerk of the Court using CM/ECF, and that the foregoing document is being served this day on all counsel of record identified below, via transmission of Notice of Electronic Filing generated by CM/ECF or by some electronic form of service and/or facsimile 954/568-0085, and/or U.S. Postal Service, to:

Bruce M. Trybus, Esq.
COONEY, MATTSON, LANCE, BLACKBURN, RICHARDS & O'CONNOR, P.A.
P.O. Box 14546
Ft. Lauderdale, Florida 33302

Joshua W. Brankamp, Esq.
COONEY, MATTSON, LANCE, BLACKBURN, RICHARDS & O'CONNOR, P.A.
1600 West Commercial Boulevard
Suite 200
Fort Lauderdale, Florida 33309

Jeffrey Wilkerson, *Pro se*
7519 Lone Eagle Drive
Murfreesboro, TN 37128
obsvr@bellsouth.net


/s/     *P. Leigh McMillan Minoux, Esq.*
         P. Leigh McMillan Minoux, Esq.

Page 17 of  17