IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 4:06-CV-10116-KMM

RONALD TASSINARI, an individual,
and SHEILA SILVA, individually and as
next best friend of ASHLEY SILVA, a minor,

    Plaintiffs,
vs.

KEY WEST WATER TOURS, L.C.,
a Florida Corporation,

    Defendant.
_____/

KEY WEST WATER TOURS, L.C.,
a Florida Corporation,

    Third-Party Plaintiff/Defendant,
vs.

JEFFREY WILKERSON,

    Third-Party Defendant.
_____/

**DEFENDANT, KEY WEST WATER TOURS, LC'S,
REPLY TO THE PLAINTIFFS' RESPONSE TO ITS
MOTION FOR SUMMARY JUDGMENT**

Defendant, KEY WEST WATER TOURS, LC ("Water Tours") files this Reply to the Plaintiffs' Response to its Motion for Summary Judgment, and states as follows:

I. **THE SIX-MONTH TIME LIMIT FOR INITIATING A PETITION FOR THE LIMITATION OF LIABILITY UNDER 46 U.S.C. § 30511 DOES NOT APPLY WHEN LIMITATION IS PLED AS AN AFFIRMATIVE DEFENSE.**

The six-month time limit imposed by 46 U.S.C section 30511 does not apply to the instant action. "[T]he [six month] time limitation does not apply when the defendant raises limitation as a

defense in his answer, pursuant to Section 183."[1] Royal Insurance Co. of America v. M/Y Anastasia, 1997 WL 608722 (N.D. Fla. 1997); accord Signal Oil & Gas Co. v. Barge W-701, 654 F.2d 1164 (5th Cir. 1981); Baham v. Atlantic, Gulf and Pacific Co., 333 F.Supp. 680 (E.D. Pa. 1971); Kutger v. U.S., 169 F.Supp. 104 (N.D. Fla. 1958). Accordingly, Water Tours' affirmative defense of Limitation is timely.

II.  **WATER TOURS IS ENTITLED TO EITHER EXONERATION OR LIMITATION AS IT DID NOT HAVE THE REQUISITE PRIVITY OR KNOWLEDGE OF THE ALLEGED RISK CREATING CONDITION.**

The Plaintiffs' reliance on In The Matter of the Complaint of Bay Runner Rentals, Inc., 113 F.Supp.2d 795 (D. Md. 2000) is misplaced. In that case a personal watercraft, which had been rented from Bay Runner, collided with a bulkhead as the result of an alleged steering malfunction. Id. at 802. The cause of the accident was attributed to the vessel's lack of "off-throttle steering"[2] and the operator's lack of knowledge regarding the same.

Significantly, the court found that the party who was operating the watercraft at the time of the accident was given inadequate instructions regarding the lack of off-throttle steering and that this inherent danger was not obvious to anticipated users. Id. at 803. The court also held that the owners of the rental facility had the requisite knowledge and privity because they should "reasonably have known that certain customers were likely to receive a [personal watercraft] without receiving adequate instruction." Id. at 806. In this regard, the court noted that although the instruction manual and video contained significant warnings regarding the dangers of off-throttle

---

[1] "The Act was originally contained in 46 U.S.C.App. §§ 181-189. In 2006, in order to complete the codification of Title 46, Congress reorganized and restated the laws which formerly appeared in the appendix to that title. Pub.L. No. 109-304, § 2, 120 Stat. 1485 (2006). The Act now appears in chapter 305 of Title 46 at 46 U.S.C. 30501-30512. See id § 6, 120 Stat. at 1512." In re Omega Protein, Inc., 2007 WL 803934, n.1 (W.D. La. 2007).

[2] Lack of "off-Throttle steering" refers to the watercraft's inability to turn when the throttle is not engaged.

steering, the same were not shown to the renters. Id. Additionally, the court was particularly enamored by the fact that the pre-ride instructions were given by a "laconic sixteen-year-old dock boy . . . ." Id.

The instant case does not involve a latent danger, as was the case in Bay Runner Rentals. Unlike the facts in Bay Runner Rentals, the pre-ride instructions in this case were given by a highly experienced tour guide, Chris Betz. Depo. of Chris Betz at 5, 21 (D.E. 37, Exhibit "1"). Additionally, the instructions were a comprehensive overview of all pertinent safety information. See Instructions at pp. 5-6 of D.E. 44. In fact, the Plaintiff himself was able to remember portions of the instructions over two-years after the accident. Depo. of Ronald Tassinari at pp. 83-84, 102 (D.E. 25, Exhibit "1").

The Plaintiffs in the instant case repeatedly allege various deficiencies with Water Tours' rental process, most of which had no conceivable bearing on the subject accident. For example, the Plaintiffs continue to allege that Mr. Wilkerson "was not advised not to jump wakes at any time . . . ." (D.E. 48 at ¶ 22). Such an argument is remarkable given the fact that the Plaintiff himself has testified that Mr. Wilkerson was not jumping waves or wakes in the seconds before the accident. Depo. of Ronald Tassinari at p. 108 (D.E. 25, Exhibit "1"). This is especially significant since Mr. Tassinari watched Mr. Wilkerson's entire approach prior to the accident. Id. at 94-95.

Assuming for purposes of this motion that Mr. Wilkerson was not properly instructed by Mr. Betz, Water Tours did not have the requisite privity or knowledge of such deficiencies. Although the co-owners of Water Tours did participate in the general day-to-day business duties, none of the owners gave the pre-ride instructions or led the tour on this particular occasion. With regard to the training of its employees, the tour guides were trained to give an extensive speech addressing all of the pertinent information that is necessary to safely operate a personal watercraft.

The tour guides also received other extensive training. Specifically, Mr. Betz watched a video of a senior tour guide; personally observed pre-ride speeches by senior tour guides; shadowed senior tour guides on at least three tours; and was personally observed and critiqued by other tour guides for at least three to four days. Depo. of Chris Betz at pp. 13-15 (D.E. 37, Exhibit "1"). Accordingly, Water Tours cannot be said to have had the requisite knowledge or privity that is necessary to negate its Limitation defense.

### III. FLORIDA STATUTORY LAW IS INAPPLICABLE TO THIS MARITIME ACTION.

In re: The Complaint of Royal Caribbean Cruises Ltd., 459 F.Supp.2d 1284 (S.D. Fla. 2006) is directly on point. In that case, the Court refused to address "the merits of Claimants' arguments regarding alleged violations of Florida statutory law." Id. at 1289 n.2 ; see also id. at 1292 n.3. Significantly, the Claimants in that case relied upon the same Florida Statute that the Plaintiffs in the instant case are now attempting to rely upon. See case # 1:04-cv-20155, (D.E. 71, p. 11). Plaintiffs attempt to distinguish Royal Caribbean by arguing that the subject accident in that case occurred in Bahamian waters and therefore, "[i]t is obvious that Florida statutes would not apply . . . ." (D.E. 47 at ¶ 16). Such a distinction is irrelevant, as the Court in that case did not address such an argument or utilize such a rationale in its decision. See In re: The Complaint of Royal Caribbean Cruises Ltd., 459 F.Supp.2d 1284, 1289 n.2, 1292 n.3 (S.D. Fla. 2006); see also In re: The Complaint of Royal Caribbean Cruises Ltd., 459 F.Supp.2d 1275, 1284 (S.D. Fla. 2006).

Plaintiffs also argue that a Federal spending bill[3] pertaining to the funding of state recreational boating safety programs makes Florida statutory law applicable to this action. See (D.E. 48, at ¶¶ 12-14); (D.E. 47, at ¶¶ 1-9). This is incorrect. Plaintiffs have not cited a single case where 46 U.S.C. § 13102 was used to give state boating laws liability creating effect in

---

[3] See 46 U.S.C. §§ 13101 et seq.

maritime law. Nothing in the Federal spending bill indicates an intent to incorporate state boating laws into Federal maritime law.

As noted by the Plaintiffs, "[c]onflict preemption in maritime matters is broader than most other fields due to the recognized requirement of the need to keep uniformity of maritime laws among the states." (D.E. 47, at ¶ 13)(citing Inland Boatmen's Union of Pacific v. Dept. of Transp., 1993 AMC 479 (Wash. 1993)). Nothing in the Federal spending bill provides that each participating state must develop the same boater safety program. To the contrary, the only requirement is that the Secretary approve each state's boater safety program as a means of obtaining Federal funding. See 46 U.S.C. § 13102(c) (2007). If Plaintiffs' argument were accepted, the uniformity of maritime law would be defeated.

The uniform standard under maritime law is "ordinary reasonable care under the circumstances." Keefe v. Bahama Cruise Line, Inc., 867 F.2d 1318, 1322 (11th Cir. 1989). By alleging violations of Florida Statutory law, Plaintiffs are attempting to hold Water Tours to a standard more stringent than that, which is impermissible. As noted in the case of Branch v. Schumann, 445 F.2d 175, 178 (5th Cir. 1971), "[w]e cannot agree that the Supreme Court in [Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625 (1959)] simply set forth a minimum standard of care which any state, in its discretion, may supplement by imposing a stricter burden on the owner of a vessel in relation to his conduct toward guests. Any such supplementation necessarily entails alteration of an admiralty norm in direct contravention of the quest for uniformity and the Supreme Court's Kermarec mandate that the defendant's conduct be measured by maritime standards."

The same is true for the instant case, as the Florida Statutes relied upon by Plaintiffs place additional burdens upon Water Tours beyond the standard of ordinary reasonable care customarily

5

utilized in maritime tort cases. This aside, any alleged violation of the Florida Statutes does not constitute negligence *per se*, because those statutes do not provide for a civil remedy. See <u>Murthy v. N. Sinha Corporation</u>, 644 So. 2d 983 (Fla. 1994)(changing the test for determining whether the violation of a rule or statute constitutes negligence *per se*). None of the cases cited by the Plaintiffs hold that a state statute can be used to establish negligence per se in a maritime action. Water Tours would respectfully refer the Court to its <u>Response to Plaintiffs' Motion for Summary Judgment</u> (D.E. 51) for a complete analysis on why the alleged violations of the Florida Statutes do not constitute negligence per se.

**IV.     PLAINTIFF RONALD TASSINARI'S CLAIMS ARE BARRED BY THE CLEAR AND UNAMBIGUOUS TERMS OF THE RENTAL AGREEMENT.**

Plaintiffs argue that the rental agreement is unenforceable because Water Tours was per se negligent and because the language of the agreement is unclear. As noted above, Water Tours was not per se negligent under the standard set forth in <u>Murthy</u>; accordingly, Plaintiffs argument that the rental agreement is void based on negligence per se is incorrect. Once again, Water Tours would respectfully refer the Court to its <u>Response to Plaintiffs' Motion for Summary Judgment</u> (D.E. 51) for a complete analysis on why the alleged violations of the Florida Statutes do not constitute negligence per se.

Regarding the sufficiency of the express terms of the rental agreement, the language is clear and unambiguous. It states that Mr. Tassinari agreed to indemnify and hold Water Tours harmless "against <u>all</u> damages … and liability of <u>any</u> kind <u>no matter how arising or occasioned</u> . . . ." (D.E. 44, Exhibit "2")(emphasis added). There is nothing unclear or ambiguous about this language. Further, the agreement expressly contemplates liability arising out of the use of the "equipment and irrespective of contributory negligence of any other persons." <u>Id.</u>   In addition to this language, the term WAIVER is clearly visible in an all capital, bold font and is followed by

statements indicating "that in operating or riding on any Jet Ski type recreational vehicle that they are assuming a certain degree of risk which may result in injury." Id. Notably, Mr. Tassinari testified that he had ridden personal watercraft prior to the accident and that he was aware of the potential for injury when riding the same. See Depo. of Ronald Tassinari at 80, (D.E. 25, Exhibit "1"). Accordingly, the Plaintiff was fully aware of the potential risks and he consciously chose to waive any right of recovery against Water Tours if those risks were realized.

**WHEREFORE**, Defendant KEY WEST WATER TOURS, LC, respectfully requests that this Court grant its Motion for Summary Judgment.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy hereof was electronically filed and mailed this 29th day of May, 2007 to: Domingo C. Rodriguez, Esq. and Patricia Leigh McMillan, Esq., Rodriguez, Aronson & Essington, P.A., Attorney for Plaintiffs, 2121 Ponce de Leon Boulevard, Suite 730, Miami, FL 33134; and Jeffrey Wilkerson, 7519 Lone Eagle Drive, Murfreesboro, TN 37128.

COONEY, MATTSON, LANCE, BLACKBURN,
RICHARDS & O'CONNOR, P.A.
Attorneys for KEY WEST WATER TOURS, LC
1600 West Commercial Boulevard, Suite 200
Fort Lauderdale, FL 33309
(954) 568-6669

By: /s/ *Bruce Trybus*
BRUCE TRYBUS
Florida Bar No. 972983