## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## IN ADMIRALTY

Case No. 06-10116-CIV-MOORE/GARBER

RONALD TASSINARI, an individual, SHEILA
SILVA, individually, and as next best friend of
ASHLEY SILVA, a minor,

           Plaintiffs,

vs.

KEY WEST WATER TOURS, L.C., a Florida
corporation,

           Defendant.

_____

KEY WEST WATER TOURS, L.C., a Florida
corporation,

           Third-Party Plaintiff,

vs.

JEFFREY WILKERSON,

           Third-Party Defendant.

_____/

## ORDER GRANTING SUMMARY JUDGMENT AS TO DEFENDANT'S LIABILITY

THIS CAUSE came before the Court upon Defendant Key West Water Tours, L.C.'s

Motion for Summary Judgment (DE # 44) and Plaintiffs' Motion for Summary Judgment as to

Defendant's Liability (DE # 46).

UPON CONSIDERATION of the Motions, the pertinent portions of the record, and being

otherwise fully advised in the premises, the Court enters the following Order.

**I.      Background**

Plaintiffs are residents of Massachusetts. Defendant Key West Water Tours, L.C.

("Defendant" or "Water Tours") is a Florida corporation doing business in Monroe County, Florida, as a personal watercraft (jet skis and/or waverunners) rental agency and provider of guided personal watercraft tours to the public. On or about July 9, 2004, Defendant rented personal watercraft to Plaintiffs at or near Key West, Monroe County, Florida. Defendant then took a group of personal watercraft renters, including Plaintiffs and Third-Party Defendant Jeffrey Wilkerson, on a guided tour from its marina out to the area's surrounding waters.

During the tour, the watercraft operated by Third-Party Defendant Jeffrey Wilkerson collided with the watercraft operated by Plaintiffs Ronald Tassinari and Ashley Silva, injuring Plaintiffs Ronald Tassinari and Ashley Silva.

Defendant argues that it is entitled to summary judgment on the following issues: (1) it is entitled to exoneration from liability because there is no evidence of negligence or unseaworthiness; (2) alternatively, it is entitled to have its liability limited to the value of the watercraft (approx. $3,000.00) because it was without privity or knowledge of any negligence or unseaworthiness; (3) Florida statutory law does not apply; and (4) Plaintiff Tassinari's claims are barred by the waiver and "hold harmless" provisions of the rental agreement. Plaintiffs argue that they are entitled to summary judgment because Defendant violated certain Florida State statutes making Defendant negligent per se. Plaintiffs further argue that if Defendant is negligent per se, then Defendant is not entitled to have its liability limited to the value of the watercraft.

## II.     Standard of Review

The applicable standard for reviewing a summary judgment motion is unambiguously stated in Rule 56(c) of the Federal Rules of Civil Procedure:

> The judgment sought shall be rendered forthwith if the pleadings,
>
> depositions, answers to interrogatories, and admissions on file, together
>
> with the affidavits, if any, show that there is no genuine issue as to any
>
> material fact and that the moving party is entitled to judgment as a matter
>
> of law.

Summary judgment may be entered only where there is no genuine issue of material fact. Twiss v. Kury, 25 F.3d 1551, 1554 (11th Cir. 1994). The moving party has the burden of meeting this exacting standard. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). An issue of fact is "material" if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). It is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. Id.

In applying this standard, the district court must view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. Id. However, the nonmoving party:

> may not rest upon the mere allegations or denials of the adverse party's
>
> pleading, but the adverse party's response, by affidavits or as otherwise
>
> provided in this rule, must set forth specific facts showing that there is a
>
> genuine issue for trial.

Fed. R. Civ. P. 56(e). "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

### III.   Discussion

#### A.   The Pennsylvania Rule and Florida Statutory Law

Plaintiffs argue that Defendant is negligent per se because Defendant violated Florida State statutes enacted to protect the safety of personal watercraft renters. Pl. Mot. at 9–14. Federal maritime law's unique version of negligence per se is embodied in what is called the "Pennsylvania Rule." Superior Const. Co., Inc. v. Brock, 445 F.3d 1334, 1340 (11th Cir. 2006). "Under the Pennsylvania Rule, when a ship at the time of an allision is in actual violation of a statutory rule intended to prevent allisions, it is no more than a reasonable presumption that the fault, if not the sole cause, was at least a contributory cause of the disaster and in such a case the burden rests upon the ship of showing not merely that her fault might not have been one of the causes, or that it probably was not, but that it could not have been." Id. (citing The Pennsylvania, 86 U.S. 125, 136(1873)).

Defendant argues that State law does not apply in a case brought under federal maritime law; therefore, the Pennsylvania rule does not apply to violations of Florida statutes. Def. Resp. at 6–8. However, the Seventh Circuit recognized that "[s]everal courts have applied the Pennsylvania rule to the violation of state statutes or local ordinances." Complaint of Wasson, 495 F.2d 571, 583 (7th Cir. 1974) (citations omitted); see also Protectus Alpha Nav. Co., Ltd. v. North Pacific Grain Growers, Inc., 767 F.2d 1379, 1382–83 (9th Cir. 1985) (violation of Washington State statute would support negligence per se).

Further, State law has been applied in admiralty cases where there is no direct conflict with established federal maritime law. Wilburn Boat Co. v. Fireman's Fund Insur. Co., 348 U.S. 310 (1955); 1 T. Schoenbaum, Admiralty and Maritime Law § 4?2 (4th ed.); see also Smith v.

4

Haggerty, 169 F. Supp. 2d 376 (E.D. Pa. 2001) (applying State law regulations to negligence claims arising from a boating accident) (vacated on other grounds). The Supreme Court has recognized that "[i]n the field of maritime contracts, as in that of maritime torts, the National Government has left much regulatory power in the States." Wilburn Boat, 348 U.S. at 313 (the Supreme Court ultimately declined to adopt a federal admiralty rule governing insurance policy provisions and decided to leave that area up to State regulation).

In the present case, Plaintiffs cite to several Florida statutes that were enacted, in part, in response to an act of Congress intended to "encourage greater State participation and uniformity in boating safety efforts, and particularly to permit the States to assume the greater share of boating safety education, assistance, and enforcement activities." 46 U.S.C. §13102 (2007). The Court is not persuaded that statutes enacted in response to Congress's stated purpose of permitting the states to assume more responsibility in regulation of recreational boat safety are inapplicable merely because they were enacted by a state government.

Further, Defendant has not pointed to any established federal maritime law directly conflicting with and preempting these State statutes. In cases where a State statute conflicts with established federal maritime law or would materially frustrate a tenant of admiralty law, the State statutes should generally not be applied. Steelmet, Inc. v. Caribe Towing Corp., 779 F.2d 1485, 1488 (11th Cir.1986); Branch v. Schumann, 445 F.2d 175 (5th Cir. 1971); Miami Valley Broadcasting Corp. v. Lang, 429 So. 2d 1333 (Fla. 4th DCA 1983). Defendant overstates the holdings in Branch and Lang, arguing that State law can never be used in maritime negligence cases. Branch and Lang merely stand for the principle that State law cannot change established substantive maritime law. In Branch and Lang, the State law would have imposed a stricter

5

burden than that established by federal maritime law; because it conflicted with federal maritime law and would have effectively changed the accepted maritime standard of care, the State law could not be applied. The Florida statutes at issue were not designed to circumvent federal maritime law or substitute a stricter standard of care in negligence cases; rather, they were designed to help regulate recreational boating safety. The Pennsylvania rule is an established principle of federal maritime law, which may be applied to violations of Florida State statutes; this application does not, in and of itself, conflict with federal maritime law.

Florida Statute §327.39 makes it unlawful for the owner of a personal watercraft to "authorize or knowingly permit the [watercraft] to be operated by any person who has not received instruction in the safe handling of personal watercraft, in compliance with rules established by the commission." Florida Statute §327.54 requires that the instruction in the safe handling of personal watercraft with a motor of 10 horsepower or greater be delivered by a person who has "successfully completed a boater safety course approved by the National Association of State Boating Law Administrators and this state." These statutes, under Chapter 327 Vessel Safety, were enacted to protect boater safety, including the prevention of collisions. Further, these statutes were enacted, in part, to protect the safety of renters of watercraft (*see e.g.* §327.54), so Plaintiffs are among the class of persons intended to be protected by the statutes.

In this case, Defendant owned or had control over the personal watercraft involved in the collision. At the time of the collision, Defendant employed Chris Betz ("Betz") as a personal watercraft tour guide and allowed Betz to provide the safety instruction to persons operating the personal watercraft on the tour, including Jeffrey Wilkerson. Def. Mot. at 4–6. Betz admitted in his deposition that he had never completed a boater's safety course approved by the National

6

Association of State Boating Law Administrators. Betz Depo. at 12. Co-owner Gerald Grogan

admitted that Key West Water Tours does not require its tour guides to have passed a safe boating

course. Grogan Depo. at 19. Therefore, Defendant violated Florida statutes designed to protect

boater safety and prevent collisions, by entrusting personal watercraft to persons who were not

instructed in the safe handling of the personal watercraft as the law requires. Co-owner Jeremy

Ray indicated that he was not very familiar with the Florida statutes at issue. Ray Depo. at 9,

20–21. However, ignorance of the law is not a defense.

Applying the Pennsylvania rule, because Defendant violated statutory rules intended to

prevent boat collisions, the Court presumes that Defendant's fault caused the collision and the

burden shifts to Defendant to show this violation could not have caused the accident. Defendant

argues that "[t]he sole cause of the subject accident was the negligent operation of a personal

watercraft by Third-Party Defendant Jeffrey Wilkerson." Def. Mot. at 11. Defendant asserts that

"[t]here is not a single additional instruction that would have prevented the subject accident." Id.

Betz gave safety instructions. Betz Depo. at 32–33. According to Betz, Jeffrey Wilkerson "was

coming in way too fast . . . just like an old lady in a car, panicked, eyes wide open, completely

wide open, staring straight at the group and a panic in his face because he's going too fast, and

never let off the throttle until he hit." Def. Mot. at 7. Defendant further asserts that Defendant

had never had an accident previously and that Jeffrey Wilkerson had operated the watercraft

without problem for about two hours before the accident. It is undisputed that Jeffrey Wilkerson

panicked and that the watercraft was at full throttle until impact. However, greater knowledge

often gives a greater sense of control. Therefore, it is possible that if Jeffrey Wilkerson had

received proper instruction in handling the watercraft, he might not have panicked. Defendant has

7

not shown that its violation of statutory rules "could not" have contributed to the accident. Therefore, Defendant's fault is presumed.

### C.      Exoneration From Liability

"An owner will be exonerated from liability when he, his vessel, and crew are found to be completely free of fault." In re Complaint of Caribbean Sea Transport, 748 F.2d 622, 626 (11th Cir.1984) (citing Tittle v. Aldacosta, 544 F.2d 752, 755 (5th Cir. 1977)). As discussed above, Defendant cannot be said to be completely free of fault; therefore, Defendant is not entitled to exoneration.

### D.      Limitation of Liability Under Limitation Act

The Eleventh Circuit has held that the determination of whether the owner of a vessel is entitled to limitation of liability requires a two-step analysis: (1) "the court must determine what acts of negligence or conditions of unseaworthiness caused the accident;" and (2) "the court must determine whether the ship owner had knowledge or privity of those same acts of negligence or conditions of unseaworthiness." Keys Jet Ski, Inc. v. Kays, 893 F.2d 1225, 1230 (11th Cir. 1990) (citing Farrell Lines, Inc. v. Jones, 530 F.2d 7, 10 (5th Cir.1976)). "Privity and knowledge are deemed to exist where the owner had the means of knowledge or, as otherwise stated, where knowledge would have been obtained from reasonable inspection." China Union Lines, Ltd. v. A.O. Andersen & Co., 364 F.2d 769, 792–93 (5th Cir.1966). Under the Pennsylvania rule, as discussed above, Defendant's violation of Florida statutes regarding proper instruction in safely operating the personal watercraft is presumed to have caused the collision. The owners of Key West Water Tours, L.C. knew, should have known, and could have discovered upon minimal investigation whether its tour guides, who they hired, had completed approved boater safety

8

courses and whether the requirements of Florida law regarding proper safety and instruction were being met. Therefore, Defendant is not entitled to limitation of liability to the value of the watercraft.

### E.      Waiver and Hold Harmless Provisions of the Rental Agreement

"[A] clause in an agreement exempting a party from tort liability is unenforceable on grounds of public policy if the agreement would exempt a party from liability arising from that party's failure to comply with a safety statute, as the safety obligation created by the statute for such purpose is an obligation owed to the public at large and is not within the power of any private individual to waive." Johnson v. New River Scenic Whitewater Tours, Inc., 313 F. Supp. 2d 621, 631 (S.D.W. Va 2004) (citations omitted); Restatement (Second) of Contracts § 195 comment a (1981) ("If, for example, a statute imposes a standard of conduct, a court may decide on the basis of an analysis of the statute, that a term exempting a party from liability for failure to conform to that standard is unenforceable."). In this case, the Florida statutes violated are boater safety statutes imposing a standard of conduct on owners and liveries of vessels. It would be against public policy to enforce contract clauses purporting to exempt liveries from liability for violating these statutes. While the release and waiver provisions in the rental contracts are sufficient to release Defendant from liability for ordinary negligence, the provisions are invalid as against public policy when applied to liability arising from violation of these statutes.

### IV.      Conclusion

For the foregoing reasons, it is

ORDERED AND ADJUDGED that Defendant Key West Water Tours, L.C.'s Motion for Summary Judgment (DE # 44) is DENIED. It is further

9

ORDERED AND ADJUDGED that Plaintiffs' Motion for Summary Judgment as to

Defendant's Liability (DE # 46) is GRANTED.  The pretrial conference to discuss remaining

issues will be held as scheduled, on June 28, 2007.

DONE AND ORDERED in Chambers at Miami, Florida, this 27th day of June, 2007.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

cc:     All counsel of record